UNION CENT. LIFE INS. CO. v. BERLIN.

(Circuit Court of Appeals, Sixth Circuit. November 28, 1898.)

No. 597.

CONTRACT—SEVERANCE—ILLEGAL CONSIDERATION.

An agreement by an agent of a life insurance company to extend a premium note of a policy holder on condition that the latter would pay a personal indebtedness to the agent is indivisible, the condition exacted being the sole consideration for the agreement to extend; and, where such condition was not performed, the fact that it was one the agent had no right to impose, and was illegal, does not render the agreement to extend obligatory or effective to continue the policy in force contrary to its terms, after default in the payment of the note.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

This suit was upon a policy of life insurance issued by appellant on the life of Charles L. Berlin, of Memphis, Tenn., payable to his wife, the appellee. The trial resulted in a judgment against appellant, and to review that judgment this writ of error is prosecuted. The policy was dated February 11, 1895, and the annual premium was $129.75. As a substitute for cash payment of the first year's premium, four notes were executed by the assured, Berlin, payable to appellant. The first note was due May 15, 1895, and the second July 15, 1895. One of the conditions of the policy was as follows: "The failure to pay, if living, any of the first three annual premiums, or the failure to pay any notes, or interest upon notes, given to the company for any premium, on or before the days upon which they become due, shall avoid and null-

ify this policy without action on the part of the company or notice to the insured or beneficiary; and all payments made upon this policy shall be deemed earned as premiums during its currency. Any and all notes, with their conditions, which may be given for premiums or loans upon the security of this policy, are hereby made a part of this contract of insurance." The notes contained the following provision: "Said policy, including all conditions therein for surrender, or continuance as a paid-up term policy, shall, without notice to any party or parties interested therein, be null and void on the failure to pay this note at maturity, with interest at 6 per cent. per annum, payable annually. In case this note is not paid at maturity, the full amount of premium shall be considered earned as premium during its currency, and the note payable without reviving the policy or any of its provisions." Recovery in the court below was resisted upon the ground that the policy became forfeited by the nonpayment of the second note, falling due July 15, 1895. Berlin died on the 29th of July, 1895. C. E. Tucker was the general agent of appellant at Memphis, and J. B. Marmon was a solicitor and collector employed by Mr. Tucker. Marmon was a personal friend of Berlin, and induced him to apply for and take the policy of insurance sued on. When the note representing the first installment of the annual premium became due, February 15, 1895, Berlin was unable to meet it, and Marmon agreed with him to take care of or pay the note for him, and the amount of the note was charged to Marmon against the sum then due him for work, and was paid, as between Berlin and the company, and this became a debt due from Berlin to Marmon personally. On the 6th of July, before the maturity of the second note, and on the 15th, Marmon called on Berlin, and agreed with him to renew the second note, provided Berlin would pay him one-half of the first note, which had been assumed and paid by Marmon; it being understood, as Marmon says, that Berlin would have to be in good health, or furnish a health certificate indorsed by one of the company's medical examiners. Berlin was, at the time of this interview, sick, though his illness was not thought to be serious. Berlin was to be at his office the day following the 6th, at which time he expected to pay Marmon the amount required in order to secure a renewal of the second note, and it appears that he had procured the money necessary to make that payment, and came to the office the next day, but remained only a short time, returning home before Marmon saw him. Marmon says he impressed Berlin with the importance of paying the amount required in order to renew the second note. After failing to see Berlin on the 7th of July according to appointment, Marmon says he inquired about Berlin from time to time, and, being informed that he was getting along very well, he did not care to be too exacting, and let the matter stand, expecting to see Berlin every day, until the day of Berlin's death, on the 29th. On the 29th of July, Heckle, Berlin's brother-in-law, having ascertained that the second note had not been paid, called to see Mr. Tucker, the general agent, and, finding him absent from the city, tendered the amount of the second note to Marmon, which Marmon declined to receive. This was about 11 o'clock, and about seven hours before the death of Berlin thereafter, on the same day.

The questions made in the court below were the same as those now discussed at bar in this court, and are: First, as to the effect of the verbal agreement made between Marmon and Berlin, July 6th, for a renewal of the second note; second, whether Marmon had authority to make a contract for the renewal of the second note; third, whether or not Marmon, as agent of the company, by the agreement for renewal, may have misled Berlin by inducing him to think that the particular time of payment was not material, on account of which the company would be estopped to rely upon the failure to meet the second note as a ground of forfeiture of the policy. In his instructions to the jury the learned judge treated the questions of contract for renewal and the effect of such contract as questions of law, to be determined by the court, and submitted to the jury the question of authority of the agent to contract for renewal and the question of estoppel.

E. Watkins, for plaintiff in error.

Wm. M. Randolph, George Randolph, and Samuel Holloway, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after making the foregoing statement, delivered the opinion of the court.

In the court below and here counsel for plaintiff in error and defendant in error conceded, and indeed have argued, that so much of the verbal agreement between Marmon and Berlin for the renewal of the second note as required the payment of one-half of the amount due to Marmon personally is contrary to law and invalid, as tending to subserve the personal interests of the agent while acting on behalf of his principal, and as tending to place the agent in a position of antagonism to the best interests of the principal. The law, on grounds of public policy, demands the utmost loyalty from agent to principal at all times, and does not permit the agent, by reason of his personal interests or otherwise, to assume an attitude in conflict with the very best interests of his principal. "The policy of the rule," says Chancellor Kent, "is to shut the door against temptation, and which, in the cases in which such a relationship exists, is deemed to be of itself sufficient to create the disqualification. This principle, like most others, may be subject to some qualification in its application to particular cases; but, as a general rule, it appears to be well settled in the English and in our American jurisprudence." 4 Kent, Comm. (12th Ed.) p. 438, and cases in note.

The principle will also be found stated and applied in cases like Michoud v. Girod, 4 How. 554; Hoffman v. Insurance Co., 92 U. S. 161; Park Hotel Co. v. Fourth Nat. Bank, 30 C. C. A. 409, 86 Fed. 742; City of Findlay v. Pertz, 31 U. S. App. 340, 13 C. C. A. 559, 66 Fed. 427. Counsel, however, while agreeing that the provision of the verbal contract requiring a cash payment to Marmon was invalid, entertain very different views as to the effect of the admitted illegality of this provision of the contract. For plaintiff in error it is insisted that the contract as a whole is illegal, while for the appellee the contention is that the invalid stipulation is to be eliminated from the contract, leaving the remainder of the agreement valid and in itself a complete contract of renewal, although it was contemplated that the cash payment was to be made and a renewal note formally executed.

In this state of the case, we proceed to determine the question thus raised, treating the particular condition requiring a money payment to Marmon as invalid, as has been done throughout the case, both in the court below and in this court. In the charge to the jury the court said:

"I am of the opinion, therefore, and charge the law to be, that if Marmon had the authority to make the agreement, the mere failure to sign and execute the renewal note did not forfeit this policy, but on and after the 15th of July the contract between the insurance company and the policy holder stood precisely as if Berlin had executed and delivered a renewal note according to the terms of the agreement to renew,—that is to say, a new note for the same time, and bearing the same interest, and the same stipulations as to forfeitures and payment of interest, and the payment of the note out of the proceeds of the policy, as are contained in the old note; and, for a more

practical understanding of the matter, I am willing to say that the company held the old note extended by the agreement to renew for the same length of time, according to its stipulations. In other words, the note of July 15th was renewed in fact and extended for the same time the old note bore."

That part of the instruction immediately following this paragraph, to which exception was taken and on which error is assigned, was in this language:

"And I am further of the opinion, and charge the law to be, that the condition precedent attached by Marmon to his agreement to renew, that Berlin should pay a part of the debt he owed him for advances made in his behalf, was a void condition so far as relates to the agreement of renewal, had nothing to do with the insurance company, was not binding on it one way or the other, and Marmon had no right to enforce the condition by refusing to renew the note for noncompliance with it. He had no right to use the stipulations of forfeiture contained in the policy as security for his private debt, and therefore we may lay that condition entirely out of the consideration of this case as immaterial.

"If the court is correct in these rulings, we have the condition existing that on the 15th of July, when the second premium note fell due, it was in fact renewed by the agreement between Marmon and Berlin for a new term, as to time of the same length as the old note, and the day of payment and forfeiture was extended accordingly."

In this instruction there was error. It is obvious that the result of this view would be not to give effect to the contract as actually made and understood by the parties, but to make for them a new and different contract, not contemplated by either party. It is hardly necessary to say that a court cannot make a new contract for parties, nor can it destroy the substance of the one which they have actually made, and at the same time preserve the contract obligation. The courts are without power to absolve men from their legal engagements or to make contracts for them. The condition requiring a money payment to Marmon was the sole consideration for the agreement to renew, and was a material, essential term of such agreement as made, and was indivisible. The promise to renew and the condition requiring payment of the money as the consideration were clearly provisions that were interdependent, the one being the consideration for the other. The test is, did a failure to perform on Berlin's part "go to the root of the whole and substantial consideration for the other party's promise"? The transaction is not one where a good part of the consideration can be separated from that which is bad, and the consideration is neither severable nor apportionable. The contract, being entire, can be enforced only in its entirety, and the failure to perform a material part is a complete discharge of the other party from his obligation to perform. Dennehy v. McNulta, 30 C. C. A. 422, 86 Fed. 828, and cases cited; Cockley v. Brucker, 54 Ohio St. 214, 44 N. E. 590, and cases cited; Jones v. U. S., 96 U. S. 24; 2 Kent, Comm. (12th Ed.) p. *466; 7 Am. & Eng. Enc. Law (2d Ed.) 95.

It will be observed that, in the result at which the circuit court arrived, the contract to renew the second note was, in effect, declared divisible, the entire consideration on which it rested put aside as illegal and void, and the verbal executory agreement declared obligatory, regardless of the illegal consideration, and also equivalent to a formally executed renewal of the note. The error in the instruction referred

to requires a reversal of the judgment, and we express no opinion upon the other questions discussed, as the evidence on a new trial may be different. For the error indicated the judgment is reversed and the case remanded, with a direction to set aside the verdict and award a new trial.