OWSLEY et al. v. YERKES et al.

(Circuit Court of Appeals, Second Circuit. April 10, 1911.)

No. 227.

WILLS (§ 212*)—AGREEMENTS—CONSTRUCTION.

An agreement between a widow, who claims against the will of her deceased husband, and his executor and heirs, by which the widow is to receive a certain share of the estate after payment of debts, and an additional sum after payment of legacies, and in which she agrees not to institute nor prosecute any further litigation against the executor or estate, "except * * * for the purpose of securing any rights of hers hereunder," does not debar her from maintaining a suit to enjoin the executor from taking any action which she may deem detrimental to the estate, and which would therefore directly affect her interests under the contract.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 212.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by Louis S. Owsley, personally and as executor of the will of Charles T. Yerkes, deceased, and others, against Mary Adelaide Yerkes and George W. Young. Decree for defendants, and complainants appeal. Affirmed.

See, also, 185 Fed. 686.

Wetmore & Jenner (W. O. Underwood and Laurence E. Sexton, of counsel), for appellant Owsley.

Charles O. Brewster, for appellant Yerkes.

James Russell Soley (Carroll G. Walter, of counsel), for appellees.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. Charles T. Yerkes, a resident of Chicago, died December 29, 1905, leaving a last will, against which his widow claimed. There followed a series of acrimonious contests between her, the executor, and the heirs, which finally resulted in the execution of an agreement dated November 11, 1909, between the executor of the first part, the heirs of the second part, the widow of the third part,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and George W. Young, described as the banker, of the fourth part; he having an irrevocable power of attorney to represent the widow in the affairs of the estate and an interest in her share. The preamble recited:

"Whereas, the executor and heirs claim that the said Charles T. Yerkes died seised and possessed of certain real estate in the state of New York, and certain personal property contained in the buildings situated thereon, which claims are disputed by the widow, who on her part claims to own the same; and

"Whereas, other controversies have arisen, and are likely to arise, between the widow and the said executor and heirs, and all the parties hereto believe that it is for the best interests of all parties interested in said estate of Charles T. Yerkes that the said claims and controversies be compounded and settled. and for the purpose of avoiding all further controversies between the parties hereto, and of securing a more speedy and advantageous settlement of said estate."

The parties then went on to agree that the widow should admit the title of the decedent to the realty and personalty in New York City. and should receive the present value of her dower in the realty and one-third of the net proceeds of sale of the personalty; also that she should be entitled to one-third of the personal estate, after paying the debts, less whatever she should have received from the sale of personalty in New York City and after payment of legacies to the additional sum of $400,000. The other material articles are:

"Seventh.—The parties hereto severally agree to take all proceedings and to do all acts and execute all papers necessary or convenient for the purpose of carrying out the terms and intent of this agreement, and that they will not appeal from the order confirming this agreement referred to in paragraph first hereof."

"Ninth.—The widow shall not directly or indirectly institute or prosecute any further litigation against the executor or the estate, except that it is understood and agreed that this agreement shall not in any way limit or affect the right of the widow to institute or prosecute any action or proceeding necessary or proper to enforce this agreement, or a decree confirming the same or the terms thereof, or for the purpose of securing any rights of hers hereunder; nor shall this agreement in any way limit or affect the right of the widow to assert any rights or claims which she may have waived in or pursuant to this agreement, in case of a failure to obtain the order as provided in paragraph first hereof; and she is not otherwise, directly or indirectly, to interfere with the due and prompt settlement of the estate, or to take or prosecute any appeals from any orders duly entered by the probate or Surrogate's Court having jurisdiction of the subject-matter. The purpose of this agreement is to avoid all further litigation between the various parties in interest, except as herein provided, and to effect a settlement of disputes and to insure the co-operation with the executor of all parties in interest in securing the best results in the settlement of the estate."

This agreement was consented to by the creditors and duly confirmed by the probate court of Cook county, Ill., and the widow withdrew all pending proceedings and objections against the executor, and received the value of her dower, $163,362.89, and one-third of the net proceeds of the sale of the personalty, $623,587.39. Whether the estate will be able to pay the debts and legacies depends upon the administration of the remaining assets, which consist principally of securities having no market value.

187 F.—36

In December, 1910, Louis S. Owsley, as executor of the will and as ancillary executor of the estate in the state of New York, and the heirs, as complainants, filed the bill in this case against the widow and Young, as defendants, alleging: That the estate owned over $4,000,-000 of bonds and other underlying securities of the Chicago Traction Company, that it claimed that the Chicago Railways Company was liable to pay the bonds, and that almost all of them were held by creditors of the estate as collateral security. That after the execution of the agreement of November 11, 1909, the executor applied to the probate court of Cook county, Ill., for leave to deposit the bonds under a certain reorganization agreement, which application the widow opposed, and no order has been made by the court. That subsequently the executor filed another petition in the same court, asking leave to compromise the claim of the estate against the Chicago Railways Company by exchanging the consolidated bonds for securities of the Railways Company, and also for leave to pay an assessment of the reorganization committee, with which certain of the securities had been deposited. This petition the widow likewise opposed, and no order has been made by the court. That subsequently another petition was filed in the same court on the same general lines, to which the widow objected, and which has not been heard, and that she threatens to appeal from any order made by the court over her objection.

The bill further alleges that the executor, with the consent of the pledgees, had arranged to sell the consolidated bonds to the Railways Company at 30 per cent., and that the widow filed a bill in the circuit court of Cook county, Ill., against the executor, the Railways Company, and the pledgees, under which she obtained an order restraining the said sale, and also filed a similar bill in the Supreme Court of New York for the county of New York against the executor and the pledgees in New York, under which she obtained a similar restraining order. The bill further alleges that these acts of the widow were instigated by the defendant Young, were in violation of her agreement, and that both defendants threaten to commit similar acts, to the irreparable damage of the estate, and prayed for an injunction restraining them from instituting or further prosecuting any litigation against the estate, or against Owsley as executor or as ancillary executor, or from interfering with the administration of the estate, except as specifically permitted to do so by the agreement of November 11, 1909.

Both defendants demurred to the bill, on the ground that it was without equity and the court without jurisdiction. The court below sustained the demurrers.

The contest involves several important questions, which have been elaborately discussed in the briefs, but turns in the first instance on the construction of article 9 of the agreement of November 11, 1909. It may be analyzed as follows:

"The widow shall not directly or indirectly institute or prosecute any further litigation against the executor or the estate,

"Except that it is understood and agreed that this agreement shall not in any way limit or affect the right of the widow

"(1) To institute or prosecute any action or proceeding necessary or proper

"(a) To enforce this agreement, or a decree confirming the same or the terms thereof, or

"(b) For the purpose of securing any rights of hers hereunder; nor

"(2) To assert any rights or claims which she may have waived in or pursuant to this agreement in case of a failure to obtain the order as provided in paragraph first hereof; and she is not otherwise

"(1) Directly or indirectly to interfere with the due and prompt settlement of the estate, or

"(2) To take or prosecute any appeals from any orders duly entered by the probate or Surrogate's Court having jurisdiction of the subject-matter.

"The purpose of this agreement is to avoid all further litigation between the various parties in interest, except as herein provided, and to effect the settlement of disputes and to insure the co-operation with the executor of all parties in interest in securing the best results in the settlement of the estate."

The complainants construe this article as meaning that the widow may assert her individual personal rights under the agreement and in the estate against the executor, the estate, or the heirs in whatever manner she may be advised, but that she contracts not to interfere with or intermeddle in the general administration of the estate by virtue of her interest in it. The defendants, on the other hand, contend that she may take whatever steps she thinks proper to secure any of her rights, one of which is to see that the general administration of the estate is such as to insure the payment of debts and legacies and so secure as far as possible her right to one-third of the personal estate and to the additional sum of $400,000.

The complainants' construction seems consistent with the general purpose of the agreement and with the particular language of article 9, except the provision, "or for the purpose of securing any rights of hers hereunder." This clause certainly sustains the defendants' contention, if literally construed, although the effect is to make all the other exceptions in the article unnecessary to the widow, and to deprive the waiver of any value to the complainants. Still, construed as complainants contend, the clause is invalid as against public policy. The widow would be bound to stand by and see the executor waste or give away the estate. If an executory contract to submit one's rights to arbitration or to a particular court cannot be enforced, a fortiori a contract not to protect one's rights in any way or in any court cannot be enforced. Insurance Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365; Nute v. Hamilton Insurance Co., 6 Gray (Mass.) 174; Cobb v. Insurance Co., 6 Gray (Mass.) 192. An intention to contract in violation of law should not be lightly imputed to the parties.

Indeed, there may be a question whether the whole agreement does not become invalid upon the complainants' construction, because it is not separable, so that we can say just what part of the complainants' covenants is applicable to this as distinguished from the other covenants of the widow and enforce the rest. 9 Cyc. 566; Trist v. Child, 21 Wall. 441, 452, 22 L. Ed. 623; Meguire v. Corwine, 101 U. S. 108, 25 L. Ed. 899; Union Life Insurance Co. v. Berlin, 90 Fed. 779, 33 C. C. A. 274. These cases involve stipulations in violation of statutes; but the same reasoning would apply to stipulations which are unenforceable and void as against public policy.

We adopt the construction of the defendants, as consistent with the

words used by the parties and with an intention on their part that does not violate the law.

Decree affirmed, with costs.

LACOMBE, Circuit Judge. I concur in the conclusion that the construction of the clause contended for by the defendants is the correct one, and for that reason have not examined the question of public policy, and do not now express any opinion thereon.