NASHUA RIVER PAPER COMPANY *vs.* HAMMERMILL PAPER COMPANY.

Suffolk.    October 22, 1915. — February 12, 1916.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Contract,* Validity. *Jurisdiction.*

A provision, in an ordinary commercial contract in writing between a Massachusetts corporation and a Pennsylvania corporation, that the Massachusetts corporation shall not sue the Pennsylvania corporation except in the courts of Common Pleas in the State of Pennsylvania, is void and cannot be enforced to deprive the courts of this Commonwealth of jurisdiction. Following the rule in *Nute* v. *Hamilton Mutual Ins. Co.* 6 Gray, 174, and explaining *Daley* v. *People's Building, Loan & Saving Association,* 178 Mass. 13, and *Mittenthal* v. *Mascagni,* 183 Mass. 19.

CONTRACT for $13,350.19.    Writ dated May 12, 1914.

The declaration (omitting an account annexed) was as follows:

"The defendant owed the Nashua River Paper Corporation $13,350.19 according to the account hereto annexed and said Nashua River Paper Corporation by an instrument in writing duly assigned the defendant's said obligation to one Harris H. Gilman, and said Gilman by a like instrument duly assigned the same to the Babbatassett Paper Company, and said Babbatassett Paper Company by a like instrument duly assigned the same to the plaintiff, so that the defendant owes the plaintiff said sum of $13,350.19."

The defendant filed the following plea in abatement:

"And now comes Hammermill Paper Company, appearing specially and not consenting to the jurisdiction of this court, and for answer in abatement says that all the transactions between the defendant and the Nashua River Paper Corporation set forth

or referred to in the plaintiff's declaration took place under a special contract between the defendant and the Nashua River Paper Corporation dated December 1, 1910, a copy whereof marked 'A' is hereunto annexed and made a part hereof; that by paragraph 11 of said contract 'It is stipulated and agreed that no action at law, equity or chancery shall be instituted or maintained by the Corporation in any court of any State of the United States or in any circuit or district court of the courts of the United States against the Company other than in the courts of the Common Pleas of the State of Pennsylvania;' that under the said contract the Nashua River Paper Corporation could not and cannot institute or maintain the present cause in this honorable court; and that the plaintiff cannot institute or maintain this action in this court.

"Wherefore the defendant says that this court has no jurisdiction of this action and that the writ should be abated and the action dismissed."

The defendant also filed an answer in bar, in which in the first paragraph, preceding a general denial and an allegation of payment, it set up, without waiving its answer in abatement but relying thereon, the same objection to the jurisdiction of the court set up in its answer in abatement and in the same words, except that instead of the short concluding paragraph of the answer in abatement this part of the answer in bar concluded as follows: "that under the said contract the Nashua River Paper Corporation could not and cannot institute or maintain the present cause in this honorable court; and that the plaintiff cannot institute or maintain this action in this court."

By amendment there was added to the answer in abatement and also to the first paragraph of the answer in bar the allegation, "that the said special contract between this defendant and the Nashua River Paper Corporation, a copy whereof marked 'A' is annexed to and made a part of said answer, notwithstanding the recitals therein, was executed and delivered by the parties thereto one to the other at Boston in said county of Suffolk."

The plaintiff demurred to the answer in abatement as amended and to the first paragraph of the answer in bar as amended, and alleged as causes for each demurrer the following:

"1. Said answer [paragraph] states no ground for abatement

[legal defence to the declaration] in accordance with the rules contained in R. L. c. 173.

"2. The provision in the contract referred to in said answer [paragraph] assuming to restrict the courts in which actions on said contract may be brought is collateral to the main contract and is not a ground for the abatement of the writ herein [defence to this action].

"3. The provision in the contract referred to in said answer [paragraph] assuming to restrict the courts in which actions on said contract may be brought is ineffectual to restrain the exercise by this court of its jurisdiction over the parties and the subject matter of this action.

"4. The provision in the contract referred to in said answer [paragraph] assuming to restrict the courts in which actions on said contract may be brought is contrary to public policy, illegal and void."

The case came on to be heard upon the demurrers before *Morton, J.,* who ordered that the demurrers be overruled, and, being of opinion that these orders ought to be determined by this court before any further proceedings in the Superior Court, at the request and by agreement of the parties, reported the case for such determination.

The contract, of which a copy marked "A" was annexed to the answer in abatement and to the answer in bar, was as follows:

"This agreement made this, first day of December, One Thousand Nine Hundred and Ten (1910) at Erie, Pa., Millcreek Township, Erie County, by and between the Nashua River Paper Corporation, a corporation organized under the laws of the Commonwealth of Massachusetts and having its usual place of business at Boston in the said Commonwealth (hereinafter called the Corporation) and the Hammermill Paper Company, a corporation organized under the laws of the Commonwealth of Pennsylvania and having its usual place of business at Erie, in the said Commonwealth (hereinafter called the Company).

"Witnesseth: —

"Whereas, the Corporation is engaged in the business of manufacturing paper and desires to make the company its sole and exclusive selling agent for its product, and

" Whereas, the Company is desirous of becoming the sole and exclusive selling agent for the product of the Corporation.

"1. Now this agreement witnesseth, that the Corporation in consideration of the covenants hereinafter contained to be performed on the part of the Company constitutes the Company the sole and exclusive selling Agent for the product of the Corporation, under the terms and conditions as hereinafter stated.

"2. The Corporation agrees to manufacture merchantable and marketable paper of such grades, qualities and sizes as the mills of the Corporation are equipped to manufacture and as may be ordered from time to time by the Company.

"3. The Company agrees to sell the product of the Corporation at the best market price that the Company can obtain therefor, and to use due diligence in selling the product of the Corporation. The President of the Corporation or any man he may designate and the Executive Committee of the Company or any man it may designate shall meet once a month or such other times as they may agree upon for the purpose of fixing the minimum price of the paper manufactured by the Corporation at which the same may be sold by the Company for the succeeding month or until changed by the Corporation and the Company at some future meeting. The minimum price so fixed shall be continued until changed by the parties hereto.

"4. All paper ordered by the Company from the Corporation shall be billed to the Company at the prices designated in the order which shall be the prices at which the paper is sold by the Company less 3% commission and the Company agrees to pay therefor in three equal payments on the 10th, 20th and 30th respectively of the month following the month in which the paper is shipped according to instructions of the Company.

"5. All paper ordered by the Company from the Corporation shall be shipped f. o. b. point of destination from the mills of the Corporation to such places as the Company may direct.

"6. All disputes between the Company and the purchasers from it of the said paper manufactured by the Corporation as to quality, imperfections or damage by reason of imperfect packing for shipment, shall be settled by the Company, and all losses for paper rejected by the purchasers from the Company due to inferior

quality, imperfections or improper packing of the same for shipment, through which damage may result, shall be borne by the Corporation.

"7. The Company agrees to use its best efforts at all times to sell the entire product of the Corporation. In consideration of the Corporation paying to the Company a commission of 3 % on the entire sales of said Corporation and in further consideration of the Corporation turning all their sales accounts and orders for paper now on their books over to the Company, said Company agrees in the event of the inability to sell the entire product of said Corporation and to keep the mills of the Corporation running to their full capacity due to any reason not within control of the Company so to pro-rate in tons orders for such grades of paper as are manufactured by both the Company and the Corporation in such amounts as correspond to the respective total outputs in tons of said Company and of said Corporation.

"8. It is further agreed that such paper as may be ordered by the Company for future delivery and which shall be manufactured by the Corporation and carried in storage shall be at the expense of the Company, and shall be treated as belonging to the Company, as if the same had actually been delivered to them. And such paper shall be insured by the Corporation and the insurance premium paid by it.

"9. The Corporation shall at all times be required to use its best efforts in the manufacture of merchantable and marketable paper, but shall not be responsible for its failure to do so when such failure shall be caused by the act of God, strikes, fire or by acts of the public enemy, but shall be relieved of the responsibility under this contract during the time of the existence of such causes.

"10. The agreement shall be binding between the parties hereto and shall continue in full force and effect for a period of fifteen years from the date hereof, but it is agreed that if Ernst R. Behrend shall cease to be an officer with the Company or the Corporation, the Company or the Corporation may by one year's notice to the other in writing terminate this agreement.

"11. It is stipulated and agreed that no action at law, equity or chancery shall be instituted or maintained by the Corporation in any Court of any State of the United States or in any circuit or district court of the courts of the United States against the

Company other than in the Courts of the Common Pleas of the State of Pennsylvania.

"In witness whereof the parties hereto have caused this agreement to be signed on their behalf by their respective officers hereunto duly authorized and have caused their common and corporate seals to be hereunto affixed the day and year first above written.

Nashua River Paper Corporation
By Charles H. Clinton
President.

Hammermill Paper Company
By Ernst R. Behrend
President."

Through mesne assignments the plaintiff had acquired the rights of the Nashua River Paper Corporation.

*H. S. Davis,* for the plaintiff.

*J. B. Studley,* (*R. Weston* with him,) for the defendant.

RUGG, C. J. The question is whether, in a contract between a manufacturer and its sales agent, a provision is valid to the effect that "no action at law, equity or chancery shall be instituted or maintained by the Corporation in any Court of any State of the United States or in any circuit or district court of the courts of the United States against the Company other than in the courts of the Common Pleas of the State of Pennsylvania." This stipulation occurs in an ordinary commercial contract between a corporation incorporated and domiciled in this Commonwealth and another corporation incorporated under the laws of Pennsylvania.

It becomes necessary to review some of the cases. *Nute* v. *Hamilton Mutual Ins. Co.* 6 Gray, 174, was an action upon a policy of insurance, one stipulation of which, incorporated in the contract by reference to the by-laws of the company, was in substance that any "action shall be brought at a proper court in the county of Essex." It was held that this stipulation was not binding and that an action could be brought in any county where the venue properly might be laid. The general principle on which this decision was made to rest was that it was not within the province of parties to enter into an agreement concerning the remedy

for a breach of contract, which is created and regulated by law. Considerations of public policy were adverted to as supporting the conclusion, but not given decisive weight. Chief Justice Shaw, in concluding the discussion, said: "The greatest inconvenience would be in requiring courts and juries to apply different rules of law to different cases, in the conduct of suits, in matters relating merely to the remedy, according to the stipulations of parties in framing and diversifying their contracts in regard to remedies." In *Hall* v. *People's Mutual Fire Ins. Co.* 6 Gray, 185, the provision of the contract of insurance was explicit to the effect that no action should be brought upon the policy except in the county of Worcester. Chief Justice Shaw, in giving the opinion of the court, after adverting to *Nute* v. *Hamilton Mutual Ins. Co.* as substantially deciding the question, said: "The court were of opinion that a stipulation in an original contract, that in case of breach the suit shall be brought in a particular county, or, in other words, that a suit shall not be brought in a county in which it is directed by law to be brought, is not a proper matter of contract. After a contract has been made and broken, the remedy is regulated by law, and of course must be governed by the law of the forum where the remedy is sought. . . . It is a well settled maxim, that parties cannot, by their consent, give jurisdiction to courts, where the law has not given it; and it seems to follow from the same course of reasoning, that parties cannot take away jurisdiction, where the law has given it." The same point was decided in *Amesbury* v. *Bowditch Mutual Fire Ins. Co.* 6 Gray, 596, 603. In *Roberts* v. *Knights,* 7 Allen, 449, it was held that a British subject, who had shipped in England as seaman for an entire voyage under a statutory law which provided that under such contract no seaman should sue for wages in any court abroad except in case of discharge or danger to life, nevertheless might bring an action against the master of the vessel although both parties were residents of Great Britain. It commonly has been thought that "such law enters into the terms of the contract and becomes a part of its obligation." *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 7. Therefore, the refusal of the court to give any heed to the British statute is significant, although there was no discussion of the point here raised. These cases generally have been understood as supporting the proposition

that parties could not contract that their disputes arising under the contract should be litigated in a single court or in the courts of a particular jurisdiction.

It was held in *Home Ins. Co.* v. *Morse,* 20 Wall. 445, that a statute making it a condition precedent to the granting of the privilege to a foreign corporation to do business within a State, that it would not remove suits from State to federal courts, was unconstitutional and a contract to that effect was invalid. It there was said, at page 451: "A man may not barter away his life or his freedom, or his substantial rights. . . . In a civil case he may submit his particular suit by his own consent to an arbitration, or to the decision of a single judge. So he may omit to exercise his right to remove his suit to a Federal tribunal, as often as he thinks fit, in each recurring case. In these aspects any citizen may no doubt waive the rights to which he may be entitled. He cannot, however, bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit his rights at all times and on all occasions, whenever the case may be presented." This point was reaffirmed expressly in *Doyle* v. *Continental Ins. Co.* 94 U. S. 535. This principle has been followed in numerous decisions of circuit and district federal courts. *Prince Steam-Shipping Co.* v. *Lehman,* 39 Fed. Rep. 704. *Slocum* v. *Western Assurance Co.* 42 Fed. Rep. 235. *The Etona,* 64 Fed. Rep. 880. *Gough* v. *Hamburg Amerikanische Packetfahrt Aktiengesellschaft,* 158 Fed. Rep. 174. *United States Asphalt Refining Co.* v. *Trinidad Lake Petroleum Co. Ltd.* 222 Fed. Rep. 1006.

It was held in *Benson* v. *Eastern Building & Loan Association,* 174 N. Y. 83, 86, in substance that parties cannot in the ordinary case by contract deprive courts of competent jurisdiction of their power to adjudicate causes on the ground that that jurisdiction is prescribed by law and it cannot be increased or diminished by agreement of parties. In *Mutual Reserve Fund Life Association* v. *Cleveland Woolen Mills,* 27 C. C. A. 212, at page 214, it was said by Lurton, J.: "The policy [of insurance] . . . contained a stipulation that no suit in law or equity should be brought upon it except in the circuit court of the United States. This provision, intended to oust the jurisdiction of all State courts, is clearly invalid. Any stipulation between contracting parties distinguishing between the different courts of the country is contrary to

public policy, and should not be enforced." To the same effect, see *Savage* v. *People's Building, Loan & Savings Association,* 45 W. Va. 275, 282; *Bartlett* v. *Union Mutual Fire Ins. Co.* 46 Maine, 500; *Reichard* v. *Manhattan Life Ins. Co.* 31 Mo. 518; *Indiana Mutual Fire Ins. Co.* v. *Routledge,* 7 Ind. 25; *Baltimore & Ohio Railroad* v. *Stankard,* 56 Ohio St. 224; *Owsley* v. *Yerkes,* 109 C. C. A. 250; *First National Bank of Kansas City* v. *White,* 220 Mo. 717, 737; *Healy* v. *Eastern Building & Loan Association,* 17 Penn. Sup. Ct. 385, 392, 393; *Matt* v. *Iowa Mutual Aid Association,* 81 Iowa, 135; *Shuttleworth & Co.* v. *Marx & Co.* 159 Ala. 418, 428.

In many of these cases the opinion of this court by Chief Justice Shaw in *Nute* v. *Hamilton Mutual Ins. Co.* 6 Gray, 174, has been cited and relied on as an authority. Attempts to place limitations by contract of the parties upon the powers of courts as to actions growing out of the particular contract, or to oust appropriate courts of their jurisdiction, have been regarded with disfavor and commonly have been held invalid. *Guaranty Trust & Safe Deposit Co.* v. *Green Cove Springs & Melrose Railroad,* 139 U. S. 137, 140. *Meacham* v. *Jamestown, Franklin & Clearfield Railroad,* 211 N. Y. 346, 352, 353. It might be argued with force that the law as to the enforcement of rights arising out of personal injuries was imported into the terms of a contract for hire. Yet it has been decided that statutory limitations, to the effect that a right of action for personal injuries shall be confined to the State where it occurred, are invalid. *Atchison, Topeka & Santa Fe Railway* v. *Sowers,* 213 U. S. 55, 70. *Tennessee Coal, Iron & Railroad Co.* v. *George,* 233 U. S. 354.

So far as we are aware, the current of authority (with the exceptions presently to be noted) is unbroken in support of the principle laid down in *Nute* v. *Hamilton Mutual Ins. Co.* 6 Gray, 174, although that principle is followed by compulsion of authority and under protest by Judge Hough in *United States Asphalt Refining Co.* v. *Trinidad Lake Petroleum Co. Ltd.* 222 Fed. Rep. 1006. There are two of our own cases where the principle was not applied and which appear to be exceptions to it. In *Daley* v. *People's Building, Loan & Saving Association,* 178 Mass. 13, an action was brought by a citizen of this Commonwealth which involved the construction of a condition contained in his certificate of membership in the defendant corporation, to the effect that "Any

action brought against this association by any shareholder shall be brought . . . in the county of Ontario, State of New York." It was held that this condition of the contract should be enforced. After stating that it was not meant to overrule *Nute* v. *Hamilton Mutual Ins. Co.* 6 Gray, 174, the court said: "Here we are dealing with a New York corporation, most of whose members would live in New York, and the greater part of whose dealings and contracts naturally would take place also in New York. There, we take it from *Greve* v. *Aetna Live Stock Ins. Co.* 81 Hun, 28, which was put in evidence, the condition would be an answer to an attempt to sue in another county. The condition, at least so far as we have occasion to consider it, refers to suits by members of the corporation as such. It is perfectly reasonable, and as applied to a New York corporation in view of the New York law cannot be held contrary to the policy of Massachusetts with regard to such contracts as happen . . . to be concluded on this side of the boundary line. . . . It will be understood that we are speaking of parties standing in an equal position where neither has any oppressive advantage or power, and that our decision as to the validity of the condition as a defence does not go beyond the particular circumstances of this case." It is obvious that the assumption based upon *Greve* v. *Aetna Live Stock Ins. Co.* 81 Hun, 28, that such a contract would be valid under the laws of New York, was an important factor in the reasoning of the court. The Daley case was decided in February, 1901. It was held, however, in *Benson* v. *Eastern Building & Loan Association,* 174 N. Y. 83, 86, decided in March, 1903, that *Greve* v. *Aetna Live Stock Ins. Co.* did not state correctly the law of New York, and precisely the same condition that was before this court in *Daley* v. *People's Building, Loan & Saving Association* was there adjudged to be invalid and unenforceable. If the Benson case had been decided earlier than the Daley case, and the law of New York had been proved in the Daley case, as declared finally and conclusively in the Benson case, instead of the erroneous view put forward in the decision of the Greve case by an inferior court, an important link in the chain of reasoning by which the conclusion in the Daley case was reached would have been wanting. The binding force of such a decision is open to question. *Kapiolani* v. *Atcherley,* 238 U. S. 119. The reasoning and ground of the decision well might have

been different, although possibly the result might have been the. same upon the ground that certificates of membership in the New York corporation were accepted with the inherent limitation and restriction explained at length in *Longyear* v. *Hardman*, 219 Mass. 405. As the decision in the Daley case was expressly confined to its own peculiar circumstances, it can hardly be considered as substantially narrowing the authority of *Nute* v. *Hamilton Mutual Ins. Co.* 6 Gray, 174.

In *Mittenthal* v. *Mascagni*, 183 Mass. 19, the parties were both non-residents. The action was on a contract made in Florence, Italy, where the defendant, a subject of the King of Italy, had his home and where the plaintiffs, citizens of New York, elected a domicil by a provision of the contract. It related to a concert tour through the various States of this country, and was partly to be performed in Florence, and contained the provision that the courts of Florence, Italy, should have exclusive jurisdiction of any difference between the parties, except that the defendant reserved a right of action in New York for a payment of his recompense due under the contract. It was held that under the circumstances of hurried travel through many different jurisdictions, it was reasonable that the parties should fix upon the jurisdiction of the domicil of the defendant as the one where disputes should be adjusted. As both the parties were non-residents, they had no standing in the courts of this State as matter of strict right, but only as matter of comity. *National Telephone Manuf. Co.* v. *DuBois*, 165 Mass. 117. It, therefore, was regarded as appropriate to yield to the terms of a contract between the parties having such obvious foundation in convenience and reason, although the court well might have declined to exercise any jurisdiction of the case on the ground that the parties were aliens. *Nute* v. *Hamilton Mutual Ins. Co.* 6 Gray, 174, was referred to in the opinion and not treated as overruled.

In this connection *Palmer* v. *Lavers*, 218 Mass. 286, 291, may be adverted to, where it was said that "where one of two parties to a possible litigation, in order to obtain a release from what is equivalent to an attachment, agrees that the judgment of the court of first instance shall be final, that agreement does not come within that principle [that is, the principle of *Nute* v. *Hamilton Mutual Ins. Co.* 6 Gray, 174], and that it is an agreement·which is

binding and will be enforced." That decision has no relevancy to the question now presented. Nor is the question here raised, whether the parties may by contract provide that their respective rights growing out of the agreement shall be determined according to the law of a particular jurisdiction. See *Brandeis* v. *Atkins,* 204 Mass. 471, 476; *Pritchard* v. *Norton,* 106 U. S. 124, 136; *Greer* v. *Poole,* 5 Q. B. D. 272, 274.

The Daley and Mittenthal cases, as to the points adjudicated, while not extending the doctrine of the Nute case, do not overrule it and are not inconsistent with it. All three of these cases may be treated as stating the law applicable to the several states of facts presented to the court. The Nute case lays down the general principle. The other two cases stand as sound upon their several states of facts. To extend them to the present case involves overruling the Nute case. That case, as has been pointed out, states a general principle which has been adopted and prevails in all federal courts by reason of the binding decisions of the United States Supreme Court in *Home Ins. Co.* v. *Morse,* 20 Wall. 445, and *Doyle* v. *Continental Ins. Co.* 94 U. S. 535. The same rule prevails generally in all States where the question has arisen. It relates to a matter as to which uniformity of decision and harmony of law among the several jurisdictions of this country is desirable. It would be unfortunate if contracts touching a subject of general commercial interest and which may be broadly operative as to jurisdiction, should be held valid in one State and invalid in all others. All these circumstances bring us to the conclusion that the clause in the contract here in question is unenforceable and that, therefore, the action can be maintained in the courts of this Commonwealth.

The plaintiff's demurrers to the defendant's answer in abatement and to the part of the answer in bar setting up the same matter must be sustained. The case is to stand for disposition upon the issues raised by the answer to the merits.

*So ordered.*