**Bob DAVIS, Plaintiff,**

v.

**PRO BASKETBALL, INC., Defendant.**

**No. 74 Civ. 521–LFM.**

United States District Court,
S. D. New York.

Sept. 9, 1974.

**2**

Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant; Howard L. Ganz, New York City, of counsel.

Nickerson, Kramer, Lowenstein, Nessen, Kamin & Soll, New York City, for plaintiff; Robert M. Heller, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

This is a diversity action for breach of contract. Defendant moves to dismiss the complaint for lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, Rules 12(b)(1), (3) and (6), Fed.R.Civ.P., or, in the alternative, for an order staying this action pending arbitration. Since the parties have submitted affidavits in support of their positions, we will treat the 12(b)(6) motion as one for summary judgment.

Plaintiff Bob Davis, a New York resident, is a professional basketball player who achieved some fame while playing college basketball at Weber State University in Ogden, Utah. Defendant Pro Basketball, Inc. is an Oregon corporation which owns and operates the Portland Trail Blazers, a member of the National Basketball Association (NBA).

Plaintiff and defendant entered into a written "no-cut" contract on April 18, 1972 which obligated Davis to play basketball exclusively for the Trail Blazers for a three-year period for $250,000, payable in installments. Under the contract, Pro Basketball must pay plaintiff the $250,000 whether or not he made the Trail Blazers' roster, hence the "no-cut" nature of the contract. The contract is an amended form of the NBA Uniform Player Contract, with an individually negotiated rider attached. The terms of the Uniform Player Contract are negotiated between the NBA and the National Basketball Players' Association (Players' Association), the authorized collective bargaining representative for all NBA players, and the current contract expires June 1, 1975.

Shortly after the parties executed the April 18 agreement, it was discovered that plaintiff suffered from a pre-existing injury to his left knee which required surgery and which, defendant contended, would prevent Davis from playing basketball during the 1972-73 NBA season and, perhaps, during subsequent seasons as well. To resolve this dispute, the parties entered into a "Modification of Agreement" which provided that the Trail Blazers could terminate the agreement with Davis within thirty days of the start of the 1973-74 regular training camp, if "Davis is unable to perform as a player solely as a result of irremediable (exclusive of surgery) injury to Davis' left knee." Otherwise, the contract would remain in full force and effect.

On October 3, 1973, by letter, defendant terminated the contract under the terms of the Modification of Agreement and suspended all payments of money to plaintiff. After some inconclusive communications between the parties, plaintiff brought this action for the $175,000 allegedly still payable on the contract.

At the outset, we are met with defendant's contention that paragraph 21 of the original agreement bars plaintiff from bringing this action in this district. Paragraph 21 provides that an action under the contract must be brought

> "in a State or Federal court of competent jurisdiction of the county or district whose territorial jurisdiction includes the home city in which the club is located."

Since the Trail Blazers are located in Portland, Oregon, defendant contends that the District Court for the District of Oregon is the only proper federal venue. Plaintiff argues, however, that the venue clause of paragraph 21 was waived by the parties in the Modification of Agreement. We find it unnecessary to decide the waiver issue because it would unduly delay this action to enforce the venue selection clause.

The modern trend is to enforce a venue selection clause unless it would be unreasonable to do so. Wm. H. Muller & Co. v. Swedish American Line Ltd., 224 F.2d 806 (2d Cir.), cert. denied, 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955); Central Contracting Co. v. Maryland Cas. Co., 367 F.2d 341 (3d Cir. 1966). Contra, Carbon Black Export, Inc. v. The S.S. Monrosa, 254 F.2d 297 (5th Cir. 1958), cert. dismissed, 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723 (1959); In re Unterweser Reederei GMBH, 428 F.2d 888 (5th Cir. 1970). Thus, the court, in its discretion, may refuse to assert its jurisdiction if, upon the facts of the case before it, the venue clause does not appear unreasonable. Jack Winter, Inc. v. Koratron Co., 326 F.Supp. 121 (N.D.Cal. 1971); Matthiessen v. National Trailer Convoy, Inc., 294 F.Supp. 1132 (D. Minn.1968).

This is a diversity case involving no question of federal law. We think, therefore, that we "should assume no more and no less jurisdiction than a state court would if the latter were presiding over the same matter." National Equipment Rental, Ltd. v. Reagin, 338 F.2d 759, 762 (2d Cir. 1964). See, Arrowsmith v. UPI, 320 F.2d 219 (2d Cir. 1963). Thus, we must look to the New York rule on venue selection clauses.[1]

The New York courts have long refused to enforce agreements which ousted their courts of jurisdiction. Kyler v. United States Trotting Ass'n, 12 A.D.2d 874, 210 N.Y.S.2d 25, motion for leave to appeal dismissed, 12 A.D.2d 1004, 212 N.Y.S.2d 1022 (4th Dep't 1961); Arsenis v. Atlantic Tankers, Ltd., 39 Misc.2d 124, 240 N.Y.S.2d 69 (Civ.Ct.N.Y.Co.1963). Nevertheless, recent New York cases have adopted a less rigid rule leaving enforcement of a forum selection clause to the sound discretion of the court. Export Ins. Co. v. Mitsui S.S. Co., 26 A.D.2d 436, 438, 274 N.Y.S.2d 977 (1st Dep't 1966); Hodom v. Stearns, 32 A.D.2d 234, 236, 301 N.Y.S.2d 146 (4th Dep't), appeal dismissed 25 N.Y.2d 722, 307 N.Y.S.2d 225, 255 N.E.2d 564 (1969); J.M. McLaughlin, "Adjective Law, Civil Practice," 19 Syr. L.Rev. 501, 509–510 (1968).

Whether we apply the New York or federal rule, we think our discretion is best exercised by refusing to enforce the venue selection provision here. As we will discuss *infra*, arbitration is appropriate here, and it would be a needless waste of the time and resouces both of the parties and the federal judiciary if plaintiff were required to bring this action again in Oregon, only to have that court stay the action pending arbitration. If the action continues after arbitration, however, defendant may

---

1. Although the choice-of-law issue presented here arose, in the context of a diversity action, in both Central Contracting Co. v. Maryland Cas. Co., *supra*, and Geiger v. Keilani, 270 F.Supp. 761 (E.D.Mich.1967), it was not decided because the Pennsylvania and Michigan rules did not differ from the majority federal rule. See, Central Contracting Co. v. C. E. Youngdahl & Co., 418 Pa. 122, 209 A.2d 810 (1965).

then seek to transfer it to the District of Oregon under 28 U.S.C. § 1404(a).

Article XVI of the collective bargaining agreement between the NBA and the Players' Association provides, in part:

"*Section 1.* Any dispute involving the interpretation or application of, or compliance with, the provisions of this Agreement or a Uniform Player Contract between a Player and a Club . . . shall be resolved in accordance with the Grievance and Arbitration Procedure set forth in this Article."

There can be no question that plaintiff is bound by the contract negotiated with the league by the Players' Association, his authorized bargaining representative,[2] and that claiming breach of that contract by defendant he seeks to recover the amount due to him under his Uniform Player Contract with defendant. It appears, therefore, that this dispute must be submitted to arbitration under the terms of Article XVI of the collective bargaining agreement. Plaintiff, however, makes several arguments in an attempt to avoid that result.

First plaintiff contends that the parties waived the Grievance and Arbitration Procedures of Article XVI when they executed the Modification of Agreement. The affidavit of Terry W. Baker, an attorney who participated in the negotiations culminating in the Modification of Agreement, indicates, however, that the parties merely waived certain mediation procedures set forth in the Uniform Player Contract because they believed they could settle the dispute concerning Davis' physical condition amicably. Although Mr. Baker's affidavit is contradicted by the affidavit of Jerry A. Davis, agent for plaintiff,

who also participated in the negotiations between the parties, the Baker affidavit is wholly consistent with the precise language upon which plaintiff relies, and, therefore, we accept Mr. Baker's interpretation of that language and reject plaintiff's contention.

Plaintiff next argues that the arbitration procedures apply only to disputes involving the Uniform Player Contract, and that, since this dispute "arises solely out of the modification agreement," those procedures are inapplicable here. The short answer to this contention is that the Modification of Agreement is merely a modification of the parties' pre-existing agreement embodied in the Uniform Player Contract. That agreement is in no way abrogated by the Modification of Agreement. The two documents are to be read together, as one contract, and that one contract is a Uniform Player Contract. We conclude, therefore, that any dispute arising out of the Modification of Agreement "involves the interpretation or application of, or compliance with . . . a Uniform Player Contract . . ." and must be submitted to arbitration.

Finally, plaintiff claims that the arbitration procedures were not intended to cover disputes concerning "medical injuries." Plaintiff offers no reasoning, language in the relevant documents, or authority to support this contention. We think it plain that the argument is without merit and that, since this case clearly involves a dispute concerning compliance with a Uniform Player Contract, arbitration is appropriate.

■■ Having decided that this dispute must be arbitrated, we must now deal with defendant's argument that plaintiff's attempt to invoke the arbitra-

---

2. Thus, "it is a first principle of the National Labor Relations Act that employees in a bargaining unit lose their 'right' to bargain individually when a majority vote to be represented by a union. For under Section 9 of that Act [29 U.S.C. § 159(a)] the elected representative becomes the exclusive representative for purposes of collective bargaining and individuals seeking to exercise control over their employment destinies must work through the union." M. Jacobs and R. Winter, Jr., "Antitrust Principles and Collective Bargaining by Athletes: Of Super Stars in Peonage," 81 Yale L.J. 1, 7 (1971); NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 180, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967); J. I. Case Co. v. NLRB, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944).

tion procedures was untimely, and that summary judgment should, therefore, be granted.

Defendant directs us to § 3(a)(3) of Article XVI, which states that any grievance must be "initiated within 20 days from the date of the occurrence upon which the Grievance is based . . . ." The parties disagree on the crucial date from which this twenty-day period should be measured. Defendant claims that the relevant date should be October 3, 1973, the day upon which defendant terminated Davis' contract, and that arbitration is time-barred because plaintiff did not respond to its termination letter until November 1, 1973, after the expiration of the twenty-day period. Plaintiff, in turn, seeks to measure the twenty days from some uncertain date subsequent to November 21, 1973, arguing that it was not until after November 21 that the parties had been unsuccessful in resolving the dispute and that, therefore, no "grievance," within the meaning of § 3(a)(3), existed until that time. We find it unnecessary to choose among the parties' interpretations of the word "grievance" because we think the issue of timeliness is for the arbitrators.

Once a court has determined that a dispute must be submitted to arbitration, any "procedural" questions which arise out of the dispute must be decided by the arbitrators. John Wiley & Sons v. Livingston, 376 U.S. 543, 557–558, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). In this circuit, Wiley has been read to apply even to issues which might bar arbitration altogether (such as timeliness), at least where the bar is not "so plain that no rational mind could hurdle" it. Rochester Telephone Corp. v. Communications Workers of America, 340 F.2d 237, 239 (2d Cir. 1965). See also, Carey v. General Electric Co., 315 F.2d 499 (2d Cir. 1963), cert. denied, 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179 (1964). Here, we think a difficult issue is raised concerning the date from which the twenty-day period should run and that the arbitrators, more familiar with the NBA grievance procedures than we, should resolve the issue. We, therefore, deny defendant's motion for summary judgment and stay this action pending arbitration.

Accordingly, defendant's motion to dismiss and for summary judgment is denied. The alternative motion to stay this action pending arbitration is granted.

So ordered.