**KINGS PROFESSIONAL BASKETBALL CLUB, INC., Plaintiff,**

**v.**

**Michael K. GREEN, Defendant.**

**No. 84–0182–CV–W–1.**

United States District Court, W.D. Missouri, W.D.

Aug. 17, 1984.

Gerald M. Kraai, John D. Dunbar, Robert J. Margolin, Margolin & Kirwan, Kansas City, Mo., for plaintiff.

Arthur H. Stoup, David W. White, Stoup & Thompson, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDERS RULING PENDING MOTIONS

JOHN W. OLIVER, Senior District Judge.

### I.

This case pends on (1) defendant Green's motion to dismiss or in the alternative, motion to stay pending final determination of the state court action and (2) plaintiff's motion for summary judgment. Orders will be entered denying defendant Green's alternative motion to dismiss or to stay and granting plaintiff's motion for summary judgment.

### II.

Defendant Green's alternative motion to dismiss or to stay was filed March 12, 1984. On May 11, 1984, the parties agreed upon and filed a stipulation of undisputed facts to which was attached a number of relevant exhibits. On May 24, 1984, after consideration of the suggestions filed by the parties in support and in opposition to defendant Green's alternative motion, we entered a memorandum and order which stated the following:

"Pending in this case is defendant's motion to dismiss or in the alternative, motion to stay pending final determination of the state court action. We have carefully considered the suggestions filed by both sides in support of their respective positions and, based upon the stipulation of evidence presently in the record, we are prepared to enter an order denying defendant's motion based upon the Supreme Court's holdings in *South-*

*land Corp. v. Keating*, —— U.S. ——, 104 S.Ct. 852 [79 L.Ed.2d 1] (1984); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, [460] U.S. [1], 103 S.Ct. 927 [74 L.Ed.2d 765] (1983)."

In order to make certain that all data was before the Court which counsel wanted to be considered in connection with that motion, we stated that:

"Before making a final determination of defendant's motion we want to make certain that neither of the parties contend that any factual issue is in dispute. The parties will therefore be required to file a joint response stating either (1) that there are no disputed facts and no additional relevant evidence to be adduced; or (2) what facts are in dispute and what evidence needs to be adduced."

The files and records in this case show that on June 4, 1984, the parties filed their joint response pursuant to the May 24, 1984 order. Our July 6, 1984 memorandum and order, which denied defendant Green's June 29, 1984 motion to stay consideration of plaintiff's motion for summary judgment, noted that the parties were in agreement that there were no facts in dispute and that no additional evidence need be adduced before this Court's ruling of defendant Green's alternative motion to dismiss or to stay. Indeed, Order (5) entered on July 6, 1984 stated that it was not necessary to make any additional directions in regard to defendant's alternative motion to dismiss or to stay for the reason the Court had been advised by the parties that such motion was ripe for determination.

We have again considered the briefs in support and in opposition to defendant's alternative motion to dismiss or to stay. We are satisfied, as we stated in our May 24, 1984 memorandum opinion, that the Supreme Court's recent decisions in *Southland Corp. v. Keating, supra* and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp., supra*, require that we enter an order denying defendant's alternative motion to dismiss or to stay. As stated most recently in *Southland Corp. v.*

*Keating,* the Congress, in enacting § 2 of the Federal Arbitration Act, "declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."

The order we indicated in our May 24, 1984 memorandum that we were then prepared to enter denying defendant's motion will therefore be entered at this time.

## III.

We also discussed the procedural posture of plaintiff's motion for summary judgment in our July 6, 1984 memorandum opinion. We there noted that the June 4, 1984 joint response filed by the parties pursuant to this Court's May 24, 1984 order, reflected the plaintiff's view that plaintiff's motion for summary judgment was then in appropriate posture for ruling. We also noted that the joint response stated that defendant did not agree that a final determination as to the plaintiff's alleged right to permanent equitable relief could be determined on the basis of the joint stipulation of the parties, filed May 11, 1984, and upon plaintiff's statement of supported facts, filed May 31, 1984. Our July 6, 1984 memorandum opinion expressly stated that the joint response, as agreed to by counsel for both sides, did not "reflect any contention on the part of the defendant that there are any material facts in dispute which would preclude the ruling on the merits of plaintiff's March 31, 1984 motion for summary judgment."

Plaintiff's May 31, 1984 statement of supported facts was filed in support of its motion for summary judgment which was filed the same day. Although paragraph 9 of a proposed agreed Rule 16(b) and Rule 26(f) order scheduling discovery, filed March 27, 1984, reflected that the parties then agreed that "neither party presently believes that any discovery will be necessary in this case," we have attempted throughout our processing of this case to direct proceedings that would establish the presence or absence of any dispute concerning any material factual issues which would preclude the case from being ruled on a Rule 56 motion for summary judgment.

The June 4, 1984 joint response of the parties did not reflect that defendant in any way placed in dispute any of the 35 paragraphs contained in plaintiff's May 31, 1984 statement of supported facts. Rather, paragraph 4 of the joint statement simply stated that defendant "Green contends that the 'facts' listed in Paragraphs 3, 5, 7, 8, 9, 10, 11, 15, 16, 17 and 18 are questions of law, not fact." In a similar manner, paragraph 6 of the joint statement stated that defendant "Green further contends that the 'facts' listed in Paragraphs 27 and 28 are irrelevant and not admissible." And paragraph 7 of the joint response stated that defendant "Green also contends that the 'facts' listed in Paragraphs 33, 34 and 35 are mere allegations and are not facts upon which this Court may base its decision."

In order to ascertain whether any issue of material fact was in dispute which would preclude our ruling plaintiff's motion for summary judgment, we entered the following order of July 6, 1984:

"ORDERED (3) that on or before July 20, 1984, defendant shall file suggestions in opposition to plaintiff's March 31, 1984 Motion for Summary Judgment in accordance with the requirements of Rule 56 of the Federal Rules of Civil Procedure, including but not limited to the express requirements of Rule 56(e)."

Rule 56(e), to which we directed particular attention, provides that:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Defendant's suggestions in opposition to plaintiff's motion for summary judgment, timely filed on July 20, 1984, followed the same pattern forecast by the June 4, 1984 joint response of the parties.

■ Again defendant did not attempt to put in factual dispute any of the paragraphs of plaintiff's May 31, 1984 statement of supported facts. Defendant simply stated that the paragraphs that related to "the legal status of the Kings Professional Basketball Club, Inc., the National Basketball Association and the National Basketball Players Association are not questions of fact, but questions of law." Defendant also suggested that many of plaintiff's paragraphs, which contained particular quotations from various of the exhibits before the Court, were not properly stated because "the documents best speak for themselves." Such statements do not "set forth specific facts showing there is a genuine issue for trial" in regard to those particular paragraphs within the meaning of Rule 56(e).

Defendant did, however, file counter-affidavits in regard to paragraph 27 of plaintiff's statement of supported facts. That paragraph, and paragraph 28 of plaintiff's statement of supported facts related to statements made in a conference between the trial judge and counsel in the case which pends in the Circuit Court of Jackson County, Missouri.

The joint response, as we have noted, stated defendant's contention in its paragraph 6, that the factual data contained in those two paragraphs were "irrelevant and not admissible." We quite agree with defendant's contention and expressly state that our order granting plaintiff's motion for summary judgment does not in any way rest upon paragraphs 27 and 28 of plaintiff's statement of supported facts. In the next part of the memorandum opinion we shall state grounds upon which we do base our order granting plaintiff's motion for summary judgment. We find and conclude that the defendant has not generated any genuine dispute about any of the factual data that will be stated in that part of this memorandum opinion.

IV.

Rule 52 makes clear that "findings of fact and conclusions of law are unnecessary on decisions of motions under ... Rule 56." It has long been our practice, however, to make findings of fact and to state conclusions of law in cases in which motions for summary judgment are granted. That practice is based on our agreement with the view stated by the late Judge John E. Miller in *Rogers v. General Electric,* 341 F.Supp. 971, 972 (W.D.Ark. 1972) that "although findings are not necessary on the motion for summary judgment ... the parties are entitled to know the reasons upon which the judgment of the court are based." Various courts of appeal have also indicated that findings and conclusions on Rule 56 motions are helpful for purposes of appellate review. See, for example, *Hanson v. Aetna Life and Casualty Co.,* 625 F.2d 573, 575 (5th Cir.1980).

We are satisfied that plaintiff's May 31, 1984 statement of supported fact accurately reflects the undisputed factual circumstances presented in this case and properly states the substance of the legal principles that must be applied to plaintiff's pending motion. It may well be true that some of the paragraphs in plaintiff's May 31, 1984 filing do state conclusions of law, as defendant contended in the parties' June 4, 1984 joint response. And it may also be true that some of the paragraphs in plaintiff's filing did summarize or only partially quote from some of the exhibits before the Court, as defendant also contended in the parties' June 4, 1984 joint response.

Those facts, however, do not establish any reason to separate the paragraphs of plaintiff's statement into findings of fact and conclusions of law or to set forth each of the exhibits in full. The purpose of voluntarily stating our findings and conclusions in ruling the pending Rule 56 motion will be adequately served by setting forth the paragraphs of plaintiff's statement

with which we are in agreement, making such modifications which we believe are appropriate under the circumstances. In the manner stated, we find and conclude:

1. The Club is a Missouri corporation with its principal offices in Kansas City, Missouri. (Joint Stipulation Paragraph 1)

2. At all relevant times the Club was a member of the National Basketball Association ("NBA"). (Joint Stipulation Paragraph 1)

3. The Club and the NBA are employers under 29 U.S.C. Sec. 152 (29 U.S.C. Sec. 152).

4. Plaintiff, Michael K. Green ("Green") is a citizen and resident of Colorado. (Joint Stipulation Paragraph 2)

5. From September 15, 1976, until his termination, Green was a professional basketball player and an employee under 29 U.S.C. Sec. 152. (Joint Stipulation Paragraph 2; 29 U.S.C. Sec. 152)

6. Green has transacted business in Missouri. (Joint Stipulation Paragraph 2)

7. The National Basketball Players Association ("Players Association") was at all relevant times a labor organization under 29 U.S.C. Sec. 152 and the exclusive collective bargaining representative of persons employed as professional basketball players by members of the NBA. (Granik Affidavit Paragraph 3)

8. The Club, the NBA, Green, and the Players Association are engaged in an industry affecting commerce under 29 U.S.C. Sec. 152 and 185 and under 9 U.S.C. Sec. 1 et seq. See *Davis v. Pro Basketball, Inc.,* 381 F.Supp. 1 (S.D.N.Y.1974); and *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064 (2d Cir.1972).

9. From April 29, 1976, to date, there were collective bargaining agreements in effect between the NBA and the Players Association. (Granik Affidavit Paragraphs 2 and 5; and Exhibits 1 and 2)

10. The collective bargaining agreements referred to in Paragraph 9 above are binding upon the Players Association, Green, the NBA, and the Club. (Granik Affidavit Paragraphs 3 and 4; Exhibit 1 at Page 1; Exhibit 2 at Page 1)

11. Section 1 of Article I of the collective bargaining agreements requires each professional basketball player and member club to enter into specified employment contracts called Uniform Player Contracts. (Granik Affidavit Exhibit 1 at Page 1–3; Exhibit 2 at Page 2)

12. On September 15, 1976, Green entered into a Uniform Player Contract with the Seattle Supersonics Corporation. (Joint Stipulation Paragraph 3; Joint Stipulation Exhibit 3)

13. After September 15, 1976, the rights to Green's Uniform Player Contract were transferred to the San Antonio Spurs Club. (Joint Stipulation Paragraph 3)

14. In 1979, the rights to Green's Uniform Player Contract were transferred to the Club. (Joint Stipulation Paragraph 3)

15. The two collective bargaining agreements which have been in effect (in succession) since April, 1976 contain a Grievance and Arbitration Procedure. So far as is pertinent here, the Grievance and Arbitration Procedures in the two collective bargaining agreements are the same. (Granik Affidavit Exhibit 1, at Pages 27–36, and Exhibit 2, at Pages 16–21)

16. Section 1 of the Grievance and Arbitration Procedures in the Collective Bargaining Agreements provides in pertinent part as follows:

"Any dispute (such dispute hereinafter being referred to as a 'Grievance') involving the interpretation or application of, or compliance with, the provisions of this Agreement or provisions of a Player Contract ... shall be resolved exclusively in accordance with the procedures set forth in this Article ...." (Granik Affidavit Exhibit 1, at Page 27; and Exhibit 2, at page 16)

17. Section 1(a) of the Grievance and Arbitration Procedure provides that grievances may be initiated by a player, a team, the NBA, or the Players Association. (Granik Affidavit Exhibit 1, at Page 27; Exhibit 2 at Pages 16–17)

18. Sections 2(c) and (d) of the Grievance and Arbitration Procedure provide that the resolution of all disputes by arbitration shall be full, final, and complete. (Granik Affidavit Exhibit 1, at Pages 28–31; Exhibit 2 at Pages 17–18)

19. Paragraph 21 of Green's Uniform Player Contract, Exhibit 3, provides as follows:

"In the event of any dispute arising between the Player and the Club relating to any matter arising under this Contract, or concerning the performance or interpretation thereof (except for a dispute arising under Paragraph 9), such dispute shall be resolved in accordance with the Grievance and Arbitration Procedure set forth in the Agreement currently in effect between the National Basketball Association and the National Basketball Players Association." (Joint Stipulation Exhibit 3, Paragraph 21)

20. On October 18, 1983, Green commenced Case No. CV83–20260 ("State Case") in the Circuit Court of Jackson County, Missouri, against the Club. (Joint Stipulation Paragraph 4; Joint Stipulation Exhibit 4)

21. Green's petition in the State Case alleged that the Club wrongfully terminated Green's Uniform Player Contract in October of 1980 and breached the Uniform Player Contract by failing to invite Green to the 1980–1981 training camp and failing to provide adequate notice to Green for termination of the Uniform Player Contract. (Joint Stipulation Exhibit 4)

22. In the State Case Green claims damages in excess of $1,300,000.00. (Joint Stipulation Exhibit 4)

23. At no time prior to October 18, 1983, the date Green filed suit in the State court, did Green or the Players Association initiate any grievance or arbitration under Paragraph 21 of Green's Uniform Player Contract, Exhibit 3, or under the Grievance and Arbitration Procedure in the collective bargaining agreements, Exhibits 1 and 2. (Joint Stipulation Paragraph 8, Fitzsimmons Affidavit Paragraphs 3 and 4)

24. On November 9, 1983, the Club filed, in the State Case, a Motion to Dismiss and Alternative Motion for Stay Pending Arbitration, together with a brief in support of those motions. (Joint Stipulation Paragraph 5(a); Joint Stipulation Exhibit 5)

25. On December 1, 1983, Green served in the State Case Suggestions in Opposition to the Club's Motions. (Joint Stipulation Paragraph 5(b); Joint Stipulation Exhibit 6)

26. On December 3, 1983, the Club filed in the State Case, a Reply to Green's Brief in Opposition to the Motions. (Joint Stipulation Paragraph 5(c); Joint Stipulation Exhibit 7)

27. (Omitted)

28. (Omitted)

29. The State Case Motions referred to in Paragraph 24 were argued on January 17, 1984. (Joint Stipulation Paragraph 5(d); Joint Stipulation Exhibit 8)

30. The Jackson County Circuit Court overruled the Club's Motions referred to in Paragraph 24 by Order dated January 17, 1984. (Joint Stipulation Paragraph 5(e); Joint Stipulation Exhibit 8)

31. On January 25, 1984, the Club filed its Answer in the State Case. (Joint Stipulation Paragraph 5(f); Joint Stipulation Exhibit 9)

32. On February 6, 1984, the Club commenced this action by filing a Complaint seeking the equitable relief prayed for in that Complaint.

33. If Green is permitted to prosecute the State Case without resorting to the Grievance and Arbitration procedures in the collective bargaining agreement and the Uniform Player Contract, the Club will suffer irreparable injury, loss, or damages.

34. The Club has no adequate remedy at law.

35. This Court has jurisdiction of this matter under 29 U.S.C. § 185; 9 U.S.C. § 5 et seq.; and under both 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

36. Plaintiff's motion for summary judgment should be granted and judgment

should be granted plaintiff in accordance with the prayer of plaintiff's Complaint.

## V.

■ We are satisfied that plaintiff is entitled to the equitable relief prayed for in its Complaint and in its pending motion for summary judgment. Most of the Supreme Court and Eighth Circuit cases cited in the briefs filed in this case have been considered and are cited in any number of earlier cases decided by this Court over the past twenty years. See, for examples of published opinions, *Greater Kansas City Laborers Dist. Coun. v. Builders' Ass'n.*, 213 F.Supp. 429 and 217 F.Supp. 1 (W.D. Mo.1963), *aff'd.* 326 F.2d 867 (8th Cir.1964), *cert. denied*, 377 U.S. 917, 84 S.Ct. 1182, 12 L.Ed.2d 186 (1964); *American Fed. of TV & Radio Art. v. Taft Broad Co. WDAF*, 368 F.Supp. 123 (W.D.Mo.1973); and *K.C. Royals v. Maj. League Baseball Players Ass'n.*, 409 F.Supp. 233 (W.D.Mo.1976), *aff'd*, 532 F.2d 615 (8th Cir.1976).

The Supreme Court's recent decisions in *Moses H. Cone, supra,* and *Keating, supra,* makes detailed discussion of the earlier Supreme Court and Eighth Circuit cases redundant. *Moses H. Cone* reaffirmed and quoted the principles of law enunciated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) which stated that "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Moses H. Cone* made clear that where the question presented is the "arbitrability of a dispute" [f]ederal law in terms of the Arbitration Act governs that issue in either state or federal court." And finally, the Court in *Moses H. Cone* approved and quoted *Colorado River's* holding that " 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction', and that the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.' "

*Keating* reaffirmed the express holding of *Moses H. Cone* in regard to the principle

that the Federal Arbitration Act creates a body of federal substantive law which is applicable in both state and federal court litigation. *Keating* made clear under presently applicable federal labor law that:

"Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate."

Defendant's suggestions in opposition concluded with the suggestion that the "ultimate issue in this case is whether or not the time limitation contained within the arbitration provision of the Collective Bargaining Agreement is the one that is applicable to this fact situation, or whether the five year Statutes of Limitation provided by Missouri law is applicable." Defendant argued that the State court held that "Missouri law should prevail and that arbitration was not mandatory under the law" of Missouri to support defendant's ultimate contention that "This Court should uphold the decision of the Circuit Court of Jackson County, Missouri by refusing to stay those proceedings."

*John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) resolved the conflict that existed with the various federal Courts of Appeal as to "whether 'procedural' conditions to arbitration have been met must be decided by the court and not by the arbitrator." Footnote 12 on page 556 of 376 U.S. and page 918 of 84 S.Ct. cite the cases from the First and Seventh Circuits which held that courts should determine whether procedural conditions to arbitration have been met. That footnote also cites the cases from Third, Fifth, and Sixth Circuits which held that all questions of procedural arbitrability were for the arbitrator rather than any court.

The Supreme Court in *John Wiley & Sons*, of course, decided the question of "whether the courts or the arbitrator is the appropriate body to decide whether procedural prerequisites which, under the collec-

tive bargaining agreement, condition the duty to arbitrate have been met" in favor of the arbitrator.

*John Wiley & Sons* held that:

"Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."

Justice Harlan, after detailed comment on the "opportunities for deliberate delay" that would be "created by separation of the 'procedural' and 'substantive' elements of dispute," concluded the unanimous opinion of the Court in *John Wiley & Sons* by stating that:

"... we think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play."

See also *Operating Engineers v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972) (reaffirming and applying the principles of *John Wiley & Sons*); *Auto., Pet. & Allied Indus. v. Town & Country Ford*, 709 F.2d 509, 514 (8th Cir.1983) (the issue of whether a notice requirement barred arbitration, under *John Wiley & Sons* is "reserved for the arbitrator, and not the court"); *Contracting Northwest v. City of Fredericksburg*, 713 F.2d 382 (8th Cir.1983) ("notice requirements with stated time limits are procedural objections which will be left to the arbitrator"); and *Davis v. Pro Basketball, Inc.*, 381 F.Supp. 1 (S.D.N.Y.1974), (which involved substantially the same National Basketball Association arbitration clause that is involved in this case, and which held that "timeliness" was a "procedural" question "to be decided by the arbitrators" under *John Wiley & Sons*).

■ We therefore reject defendant's basic legal argument that the Circuit Court of Jackson County, Missouri, rather than the arbitrator, is the appropriate body to decide what time limitation may be applicable to the dispute which the parties agreed to arbitrate.

We have carefully considered the defendant's suggestions in opposition to plaintiff's motion for summary judgment and conclude that legal contentions contained therein are not tenable. There is no factual dispute in this case that the parties contracted for arbitration. Under federal law applicable to this case, neither of the contracting parties can ignore that contract and resort to court litigation rather than arbitration. Accordingly, plaintiff's motion for summary judgment will be granted and the Clerk will be directed to enter judgment granting plaintiff appropriate equitable relief.

## VI.

For the reasons stated it is

ORDERED (1) that defendant Green's March 12, 1984 motion to dismiss, or in the alternative, motion to stay pending final determination of the state court action should be and the same is hereby denied. It is further

ORDERED (2) that plaintiff's March 31, 1984 motion for summary judgment should be and the same is hereby granted. It is further

ORDERED (3) that, in accordance with Rule 58 of the Rules of Civil Procedure, counsel for plaintiff shall within ten (10) days of this order prepare a form of final judgment, the same to be generally consistent with the prayer contained in paragraph 6 of plaintiff's May 31, 1984 motion for summary judgment, for ultimate submission to the Court for its approval.

Counsel for plaintiff shall submit his draft of a proposed final judgment to counsel for the defendant for defendant's counsel's approval, solely as to the form of the said proposed final judgment.

Counsel for plaintiff shall thereafter, and within the ten (10) day period, submit the proposed form of final judgment to the Court for its approval.

Counsel for both parties will understand that the directions above stated are designed to insure that the final judgment eventually entered will be in a form which will eliminate any complications for purposes of appellate review.