**GENERAL ENGINEERING CORPORATION, Appellee,**

v.

**MARTIN MARIETTA ALUMINA, INC., Appellant.**

No. 85–3167.

United States Court of Appeals, Third Circuit.

Argued Dec. 3, 1985.

Decided Feb. 12, 1986.

---

Diane Trace Warlick (argued), Law Offices of R. Eric Moore, Christiansted, St. Croix, U.S. Virgin Islands, for appellant.

Gordon C. Rhea (argued), Thomas Alkon, Alkon & Rhea, Christiansted, St. Croix, U.S. Virgin Islands, for appellee.

Before HUNTER, GARTH, and BECKER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Martin Marietta Alumina, Inc., appeals an order of the District Court of the Virgin Islands denying its motion to enforce a forum selection clause in a contract action brought by General Engineering Corporation. This appeal requires us to decide two issues: whether the district court correctly chose the federal standard for enforcing a forum selection clause in a suit between two Virgin Islands corporations and whether the court applied the standard properly. We find that the district court should have used the state standard. After applying this standard to the facts found below we conclude that the district court should have granted Martin Marietta's motion, and we reverse.

### I.

In September 1981, Martin Marietta Alumina, a Virgin Islands corporation wholly owned by Martin Marietta Aluminum, a California corporation, let out for bid a construction contract for the installation of electrical equipment in its St. Croix aluminum plant. This work was to be completed in conjunction with Martin Marietta's planned conversion of its oil-fired burners to coal, a project supervised by Bechtel Corporation. Bechtel ran the project with staff from its Gaithersburg, Maryland office. Martin Marietta Aluminum's headquarters are located in Bethesda, Maryland.

Along with specifications for the conversion project, the bid package included a document labeled "General Terms and Conditions." At issue in this appeal is the enforceability of the forum selection clause contained in paragraph 29 of this document, which states:

*Governing Law*

This Contract shall be deemed to have been made, executed, delivered in, and shall be governed by and construed in accordance with the laws of the State of Maryland. The parties agree that any action or suit arising out of this Contract shall be instituted in the courts of the State of Maryland and the parties hereto consent to service, jurisdiction and venue of such courts for all purposes.

In a separate document entitled "Instructions to Bidders," also included in the bid package, bidders were admonished to examine the contract documents with care, and were informed that they assumed the risks associated with any failure to familiarize themselves "with respect to all conditions which might in any way affect the cost or the performance of any work." The instructions also requested the bidders to notify Bechtel regarding any reservations or questions concerning the Contract Documents.[1] General Engineering Corporation, a Virgin Islands corporation, submitted a bid, but did not note any exception to the forum selection clause in its submission.

Martin Marietta awarded the electrical installation contract to General Engineering. On December 11, 1981, representatives of General Engineering met with representatives of Martin Marietta and Bech-

---

1. Paragraph 2 of Martin Marietta's "Instructions to Bidders" states:

*Examination of Contract Documents and Explanation to Bidders:* Any Bidder planning to submit a Proposal is responsible for examining with appropriate care the complete Contract Documents and all addenda, and is also responsible for informing itself with respect to all conditions which might in any way affect the cost or the performance of any work. Failure to do so will be at the sole risk of the Bidder, and no relief can be given for errors or omissions by the Bidder.

Should the Bidder find discrepancies in or omissions from the Contract Documents, or should their intent or meaning appear unclear or ambiguous, or should any other questions arise relative to the Contract Documents, the Bidder shall notify Bechtel in writing. The Bidder making such request will be solely responsible for its timely receipt by Bechtel. Replies to such notices may be made in the form of addenda to the Contract Documents which will be issued simultaneously to all persons who have obtained the Contract Documents from Bechtel.

tel to discuss the project's specifications and the contract's terms and conditions. Although General Engineering negotiated some of the substantive terms of the construction contract at this meeting, such as the quantities and prices of required materials, and minor engineering modifications, it did not attempt to negotiate a different forum selection clause. John McCallum, General Engineering's general manager, later testified that he failed to express reservations regarding the contract's general terms because he had been told that this section of the contract was non-negotiable when he had attempted modifications in the terms and conditions portion of previous Martin Marietta construction contracts.

On January 4, 1982, General Engineering and Martin Marietta executed a purchase order contract incorporating the bid package's "General Terms and Conditions." The parties subsequently modified the contract by executing a series of "change orders," which provided additional compensation to General Engineering for the difficulties it had experienced in coordinating its electrical work with the work performed by the other contractors at the worksite and in procuring the necessary equipment.

General Engineering completed the electrical installation in September 1982 and submitted a claim for $519,463 to cover additional costs allegedly incurred due to delays and project modifications. After Martin Marietta denied the claim, General Engineering filed suit for breach of contract in the District Court of the Virgin Islands in late August 1984. Martin Marietta responded by filing a motion for summary judgment, asserting that the district court lacked jurisdiction over the action because the contract's forum selection clause required the parties to initiate suit in the Maryland courts. General Engineering filed a cross-motion asserting that enforcement of the clause would be unreasonable, and requested an evidentiary hearing on the issue.

The district court held an evidentiary hearing on January 24, 1985. On February 13, 1985, the district court issued an order denying the motion to enforce the forum selection clause. The memorandum opinion supporting the order states that the court determined that enforcement would be unreasonable in light of two findings: (i) site visitation by the jury would be necessary at trial, because General Engineering would be unable to demonstrate effectively the difficulty it experienced in coordinating its work with that of the other contractors working on the coal conversion project without a site visitation; and (ii) proof of worksite overcrowding would require testimony from the employees of Virgin Islands contractors, which would be extremely difficult for General Engineering to provide in a Maryland court lacking personal jurisdiction over these witnesses.

## II.

### A.

■ At the outset, we must address the question whether we have appellate jurisdiction over the district court's order denying enforcement of the forum selection clause, since this order is certainly not one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Ordinarily, the final judgment rule codified in 28 U.S.C. § 1291 (1982) would preclude appellate review of the district court's pre-trial order in the interests of judicial effectiveness and efficiency. *See Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940); Fed.R.Civ.P. 54(b). Certain classes of non-final orders, however, may be appealed when immediate review advances these interests. In *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983), we recognized that orders denying a pre-trial motion to enforce a forum selection clause are reviewable by courts of appeals on three grounds: as interlocutory decisions under 28 U.S.C. § 1292(a)(2) (1982), as collaterally final orders under 28 U.S.C. § 1291, and under the All Writs Act,

28 U.S.C. § 1651 (1982). *Coastal Steel,* 709 F.2d at 193–97. In light of our decision in *Coastal Steel,* we conclude that we have jurisdiction over this appeal.

## B.

The second question we must address requires a more involved discussion. The parties to this action assume that the legal standard for enforcing forum selection clauses announced in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), governs the disposition of this appeal. Although the district court expressed some concern as to the applicability of a federal common law standard in a breach of contract suit between private parties, it interpreted our decision in *Coastal Steel* as requiring federal courts to use *The Bremen* standard absent a conflict with the parties' choice of law governing the construction of the contract. Finding no conflict with Maryland law, the court evaluated the contract's forum selection clause under *The Bremen.*[2]

In *The Bremen,* the Supreme Court, sitting in admiralty, held that a forum selection clause "is prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. at 10, 92 S.Ct. at 1913. That the Court intended this to be a strict standard in favor of enforcement is shown by the Court's admonition that enforcement may be denied only where it would be *"seriously* inconvenient," *id.* at 16, 92 S.Ct. at 1916 (emphasis in original), such that the resisting party "would be effectively deprived of its day in court." *Id.* at 18, 92 S.Ct. at 917. The Court underscored this rule by observing that absent allegations that the inclusion of the forum selection clause was a product of fraud or coercion, "where it can be said with reasonable assurance that at the time they entered the contract, the parties ... contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." *Id.* at 16, 92 S.Ct. at 1916. *See Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1974); *Coastal Steel,* 709 F.2d at 202.

 We must correct the assumption that federal courts are bound as a matter of federal common law to apply *The Bremen* standard to forum selection clauses. The construction of contracts is usually a matter of state, not federal, common law. Federal courts are able to create federal common law only in those areas where Congress or the Constitution has given the courts the authority to develop substantive law, as in labor and admiralty, or where strong federal interests are involved, as in cases concerning the rights and obligations of the United States. *See Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640–43, 101 S.Ct. 2061, 2066–68, 68 L.Ed.2d 500 (1981). Only rarely will federal common law displace state law in a suit between private parties. As the Court in *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977), observed, in a suit between private parties where federal common law is sought to be applied, "normally the guiding principle is that a *significant conflict between some federal policy or interest and the use of state law in the premises must*

---

**2.** Several district courts have interpreted *The Bremen* as requiring federal courts to use *The Bremen* standard in all cases. *See Kline v. Kawai America Corp.,* 498 F.Supp. 868, 871 (D.Minn.1980); *Taylor v. Titan Midwest Construction Corp.,* 474 F.Supp. 145, 147 (N.D.Tex. 1979); *St. Paul Fire and Marine Insurance Co. v. Travelers Indemnity Co.,* 401 F.Supp. 927, 930 (D.Mass.1975). *But see Leasewell, Ltd. v. Jake Shelton Ford, Inc.,* 423 F.Supp. 1011, 1014 (S.D. W.Va.1976); *Davis v. Pro Basketball, Inc.,* 381 F.Supp. 1, 3 (S.D.N.Y.1974) (in diversity suits, state law determines enforceability).

The response in the circuit courts has been more restrained. Courts using *The Bremen* standard have either had federal question jurisdiction, *see Bense v. Interstate Battery System of America,* 683 F.2d 718, 720 (2d Cir.1982); *Crown Beverage Co., Inc. v. Cerveceria Moctezuma S.A.,* 663 F.2d 886, 888 (9th Cir.1981), or noted that the applicable state standard was the same as the federal standard, *see Bryant Electric Co. v. City of Fredericksburg,* 762 F.2d 1192, 96 (4th Cir.1985); *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190, 202 (3d Cir. 1983).

*first be specifically shown.* [The question whether] latent federal power should be exercised to displace state law is primarily a decision for Congress." 433 U.S. at 31–32, 97 S.Ct. at 2494–2495 (emphasis added by the *Miree* Court) (citing *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 39 (1966)).

■ The interpretation of forum selection clauses in commercial contracts is not an area of law that ordinarily requires federal courts to create substantive law. The two cases in which the Supreme Court has adopted a federal standard are exceptions to this rule. In *The Bremen*, the Court sat in admiralty, an area of law over which the Constitution vests original jurisdiction in the federal courts, and where the federal courts have acted as the primary agent in developing the law. *See* U.S. Const. art. III, § 2, cl. 1. In *Scherk*, a party to an international commercial transaction contested the application of the Arbitration Act, 9 U.S.C. § 1 et seq. (1982), to a forum selection clause providing for mandatory arbitration of all disputes in Paris, France. The *Scherk* Court explicitly limited its approval of *The Bremen* rule to forum selection clauses implicating the Arbitration Act. *Scherk*, 417 U.S. at 519–20, 94 S.Ct. at 2457–58; *see* 9 U.S.C. § 2 (1982). Thus, the Court has used a federal standard only where the Constitution or Congress has recognized, either expressly or implicitly, the authority of federal courts to create substantive law. This is not such a suit.

■ Nor do we discern a strong federal interest or policy that would displace state law in the present case. The only indication of a federal interest in this suit between two Virgin Islands corporations is the fact that the action was brought in a federal court pursuant to the district court's original jurisdiction. On closer examination, however, we find the federal jurisdiction here based solidly in local law because V.I.Code Ann. tit. 4, § 76(a) (Supp. 1984)[3] vests original jurisdiction in the District Court of the Virgin Islands in civil suits when the amount in controversy exceeds $200,000. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), teaches that federal jurisdiction alone does not create a sufficiently strong federal policy to deny the application of state law. "The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law." *Texas Industries*, 451 U.S. at 640–41, 101 S.Ct. at 2066–67. The policies behind *Erie* and the absence of an explicit Congressional grant of jurisdiction to the District Court of the Virgin Islands over civil actions between Virgin Islands residents persuades us that this suit does not involve a federal interest that displaces the state's interest in formulating its own laws.[4]

■ Therefore, the question of what law governs this contract (and hence, the enforceability of its forum selection clause) must be determined in the first instance by Virgin Islands law. Title 1, § 4 of the

3. This section provides, in relevant part: "The territorial court shall have original jurisdiction concurrent with that of the district court in all civil actions wherein the matter in controversy exceeds the sum of $500 but does not exceed the sum of $200,000." Congress delegated the power to the Virgin Islands government to grant jurisdiction to the local courts over a broad range of civil suits. *See* 48 U.S.C. § 1612(a), (b) (1982).

4. The Supreme Court in *Waialua Agricultural Co. v. Christian*, 305 U.S. 91, 109, 59 S.Ct. 21, 30, 83 L.Ed. 60 (1938) advised the courts of appeals to apply the policies of *Erie* when reviewing the decisions of the territorial courts. It is interesting to note that we also would be obliged to defer to the Virgin Islands' legal standards under the *Swift v. Tyson*, 16 Pet. (41 U.S.) 1, 10 L.Ed. 865 (1842), regime, because the Virgin Islands incorporates ALI Restatements of the common law by statute. *See* V.I.Code Ann. tit. 1, § 4; *Swift*, 16 Pet. at 18–19.

Although our opinion today does not directly control district courts sitting in diversity, our discussion of the issues involved in applying federal common law indicates that these courts should apply the choice of law rule of the state in which they sit. *See Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). *See also* Gilbert, *Choice of Forum Clauses in International and Interstate Contracts*, 65 Ky. L.J. 1, 4–5 (1976).

Virgin Islands Code provides that in the absence of local statutes and precedents to the contrary, courts should follow the common law principles expressed in the various ALI Restatements of Law. *See Co-Build Companies, Inc. v. Virgin Islands Refinery Corp.,* 570 F.2d 492, 494 (3d Cir.1978). *The Restatement (Second) of Conflicts* § 187 indicates that, with certain exceptions not relevant here, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied." *See also Action Engineering v. Martin Marietta Aluminum,* 670 F.2d 456, 458–59 (3d Cir.1982) (applying § 187 in a suit between Virgin Islands corporations). In this case, the parties specified that the contract was to be governed by the law of Maryland. Therefore, the enforceability of the forum selection clause in this case is governed by Maryland law.[5]

Our conclusion that Virgin Islands and Maryland law governs this dispute does not mean that the district court decided the case incorrectly by relying upon *The Bremen* and our decision in *Coastal Steel.* We agree with Professor Reese that *The Bremen* "should be persuasive in situations where state law controls." Reese, *The Supreme Court Supports Enforcement of Choice of Forum Clauses,* 7 Int'l Law. 530 (1973). Because *The Bremen* relies heavily upon the *Restatement* rule, *see The Bremen,* 407 U.S. at 11, 92 S.Ct. at

1913, and the common law trend toward enforcing such clauses, *see* 407 U.S. at 10 n. 11, 92 S.Ct. at 1913 n. 11; Gilbert, *Choice of Forum Clauses in International and Interstate Contracts,* 65 Ky.L.J. 1, 29 (1976), it is not surprising to note that the Supreme Court's discussion has strongly influenced the state courts. *See, e.g., Hauenstein & Bermeister, Inc. v. Met-Fab Industries, Inc.,* 320 N.W.2d 886, 889–91 (Minn.1982); *Volkswagenwerk, A.G. v. Klippan, GmbH,* 611 P.2d 498, 503–04 (Alaska), *cert. denied,* 449 U.S. 974, 101 S.Ct. 385, 66 L.Ed.2d 236 (1980); *Societe Jean Nicolas et Fils v. Mousseux,* 123 Ariz. 59, 60, 597 P.2d 541, 542 (1979); *but see Davenport Machine & Foundry, Etc. v. Adolph Coors,* 314 N.W.2d 432, 436 (Iowa 1982) (rejecting *The Bremen* standard). Thus, in the absence of Maryland precedents on the enforceability of a forum selection clause, the district court applied the correct standard: Martin Marietta's forum selection clause is prima facie valid unless General Engineering shows that (i) the forum selection clause was included in the contract as a result of fraud or overreaching; (ii) enforcement would violate a strong Virgin Islands public policy; or (iii) enforcement would, in the particular circumstances of this case, result in litigation in a jurisdiction so seriously inconvenient to General Engineering as to be unreasonable. *See Coastal Steel,* 709 F.2d at 202.[6]

**5.** While Maryland courts have not addressed the issue of the enforceability of a forum selection clause, they have held that parties may by agreement choose what law will govern their contract. *See Kronovet v. Lipchin,* 288 Md. 30, 415 A.2d 1096, 1105 (1980). In so holding, the *Kronovet* court adopted the *Restatement* rule on the parties' choice of law governing their contract. It follows that Maryland courts would also permit the parties to select the forum. *See* Reese, *The Contractual Forum: Situation in the United States,* 13 Am.J.Comp.L. 187, 189 (1964). Maryland also permits the parties to waive venue by omission. *See Superior Construction Co. v. Elmo,* 204 Md. 1, 6, 102 A.2d 739, 741 (1954). Reading *Kronovet* and *Elmo* together, we conclude that Maryland would enforce the forum selection clause.

**6.** The *Restatement* endorses a general reasonableness standard for enforcing forum selection

clauses, providing that "[t]he parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given effect unless it is unfair or unreasonable." *Restatement (Second) of Conflicts* § 80 (1971). There may be some distinction between this standard and the standard articulated in *The Bremen.* The *Restatement* definition appears to give courts greater leeway in determining when a forum selection clause is enforceable, while *The Bremen* clearly places the burden on the resisting party to show that the "chosen forum is *seriously* inconvenient for the trial of the action." 407 U.S. at 16, 92 S.Ct. at 1916. The balance struck in *The Bremen* may be related to the greater impact that a less stringent rule would have between parties to a private *international* contract, where the question of forum selection is considerably more important than it would be in a purely domestic contract, where the common law can be pre-

## III.

The district court predicated its conclusions that enforcement of the forum selection clause would be unreasonable on two findings of fact. The court first determined that General Engineering's presentation of its claim of worksite overcrowding and lack of coordination between the various subcontractors working on the conversion project would benefit from a site visitation by the jury. Second, the court found that Maryland would be an inconvenient forum for General Engineering because most of the witnesses reside in the Virgin Islands. The court's determinations of the circumstances underlying its conclusion are basic or inferred facts entitled to the presumption of correctness under the clearly erroneous standard of review. The court's decision that these circumstances warrant refusing enforcement of the forum selection clause is a legal conclusion or ultimate fact subject to plenary review. *See Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir.1981). Though we cannot say that the court's determinations of basic facts are clearly erroneous in this case, in our view, neither of these circumstances support the legal conclusion and do not suffice to overcome the strong presumption in favor of enforcing forum selection clauses.

The record, fairly read, indicates that General Engineering's prime contention in this suit is that Martin Marietta's failure to coordinate the sequence of work performed by the subcontractors resulted in delays to the electrical installation project. A site visitation, however, is not essential to the effective presentation of this contention to the jury. It is difficult for us to understand how a visit to the plant in its present (complete) state would illuminate work coordination difficulties better than the testimony of the subcontractors involved in the conversion project. If General Engineering intends to show that this difficulty stemmed partly from site overcrowding, we do not believe that the use of models or photographs would be impractical. Moreover, General Engineering conceded at oral argument that the site has greatly changed since the conversion project's completion. This revelation further indicates that a site visitation is not crucial to General Engineering's case, because it is difficult to see how it intends to demonstrate conditions existing during the construction period with a visit to what appears to be an entirely different site.

General Engineering also claims that it would be denied its day in court without the live testimony of the employees of the subcontractors who worked on the conversion project, and cites our opinion in *Copperweld Steel* to support this argument. Although it is true that General Engineering will be inconvenienced by having to choose between reading deposition testimony at trial and the expense of flying these witnesses to Maryland, witness availability was a risk that was easily foreseeable at the time of the contract, and the expense of producing witnesses alone does not render a forum selection clause unreasonable. *See Prudential Resources Corp. v. Plunkett,* 583 S.W.2d 97, 99 (Ky.1979). Although the *Copperweld Steel* court noted that district courts could consider witness availability as a factor in determining whether enforcement would be unreasonable, witness availability was only one of ten circumstances articulated by the district court in that case supporting nonenforcement. *See Copperweld Steel,* 578 F.2d at 965 n. 18. The record reveals that while most of General Engineering's potential witnesses reside in the Virgin Islands, most of Martin Marietta's reside in or around Maryland. "The availability of witnesses is a problem in either jurisdiction, but an insurmountable problem in neither." *Coastal Steel,* 709 F.2d at 203–04. Under these circumstances, witness availability does not ren-

sumed to apply. *See id.* at 17, 92 S.Ct. at 1917 ("[w]e are not here dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum.... selection of the London forum was clearly a

reasonable effort to bring vital certainty to this international transaction...."). In any event, we believe that this distinction rarely will affect a court's decision to enforce a forum selection clause.

der the forum selection clause unenforceable.

## IV.

■ General Engineering also suggests that the forum selection clause was included in the contract as a result of Martin Marietta's greater bargaining power. In effect, General Engineering asks us to void the clause as a product of coercion due to General Engineering's position as a "captive industry," dependent upon Martin Marietta for the majority of its work. We agree with the district court that the record reveals no claim of fraud or overreaching. The typical case for invalidating a forum selection clause as a product of coercion occurs when consumers enter into form contracts, particularly insurance contracts, with corporations. *See* Reese, *The Supreme Court Supports Enforcement of Choice-of-Forum Clauses*, 7 Int'l. Law. 530, 535–36 (1973). Both parties here are sophisticated business entities capable of understanding and adjusting for the risks associated with a forum selection clause. Moreover, General Engineering admitted that it did not object to the forum selection clause, and the record is ambiguous as to whether Martin Marietta indeed considered its "General Terms and Conditions" to be non-negotiable.

■ Finally, General Engineering claims that enforcement of the forum selection clause is against the policy of the Virgin Islands Industrial Development Program, V.I.Code Ann. tit. 29, §§ 701–25 (Supp.1984). This act provides tax benefits and subsidies to applicants who make certain types of investments in the Virgin Islands. General Engineering argues that the Act's policy of favoring Virgin Islands businesses is compromised by Martin Marietta's insistence upon a forum selection clause that requires local businesses to litigate their claims in forums outside the Virgin Islands. We do not believe that the Act's purpose is defeated by the existence of a forum selection clause. We assume that Virgin Islands enterprises will calculate the risk of bringing suit (or being sued) in another jurisdiction and include this risk in the price of their services. It is conceivable that without such a clause outside investors would be less amenable to investing in the Virgin Islands, despite the benefits that may accrue to them under the Virgin Islands Industrial Development Program. In any event, General Engineering has not shown that the forum selection clause specifically violates a strong public policy of the Virgin Islands. *See Coastal Steel,* 709 F.2d at 202.

In sum, we hold that under the circumstances in this case, the forum selection clause was freely bargained for and does not contravene an important public policy.

## V.

Accordingly, we will reverse the order of the district court and dismiss, without prejudice, General Engineering's suit.