OPINION OF THE COURT
A. LEON HIGGINBOTHAM, JR., Circuit Judge.
This action began as an adversary proceeding before the United States Bankruptcy Court for the District of New Jersey (Camden Division) to recover monies owed. Defendant-appellant Naneo Contracting Corporation (“Naneo”) appeals from the order of the district court affirming the prior order of the bankruptcy court that, in pertinent part, denied Nanco’s motion to dismiss the complaint of plaintiff-appellee Diaz Contracting, Incorporated (“Diaz”). We must determine whether the district and bankruptcy courts erred in refusing to enforce a forum selection clause in the parties’ contract requiring that all actions arising under the contract be brought in the courts of the State of New York. For the reasons set forth below, we will reverse the judgment of the district court.
I.
“[Ojrders denying a pretrial motion to enforce a forum selection clause are reviewable by courts of appeals on three grounds: as interlocutory decisions under 28 U.S.C. § 1291(a)(2) (1982), as collaterally final orders under 28 U.S.C. § 1291, and under the All Writs Act, 28 U.S.C. § 1651 (1982).” General Eng’g Corp. v. Martin Marietta Alumina, Inc., 783 F.2d 352, 355-56 (3d Cir.1986) (citing Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 193-97 (3d Cir.), cert. denied, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983)). Accordingly, we may properly exercise appellate jurisdiction over the order of the district court upholding the non-enforcement in the bankruptcy court of the contractual forum selection clause between Naneo and Diaz.
This appeal arises out of an adversary proceeding instituted by Diaz in connection with its petition under Chapter 11 of the *1049 Bankruptcy Code, 11 U.S.C. §§ 541 & 542 (1982), against Nanco. In that proceeding, Diaz moved to recover, as property of the debtor’s estate, certain monies allegedly owed to it by Nanco.[1] Nanco filed a cross-motion for an order dismissing the proceeding on the basis of the forum selection clause in the parties’ subcontract that requires actions arising thereunder to be brought in the courts of the State of New York. Nanco relied upon this Court’s opinion in Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190 (3d Cir.), cert. denied, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983), wherein now Chief Judge Gibbons noted the rule, first articulated by the Supreme Court in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), “that a forum selection clause is presumptively valid.” 709 F.2d at 202. Acknowledging the applicability of Coastal Steel and The Bremen, the bankruptcy court nevertheless apparently concluded that Diaz had overcome the presumption of enforceability by demonstrating financial difficulty. See Appendix (“App.”) at A37-38. Specifically, the bankruptcy court stated:
As I read the Coastal Steel case, I believe it does leave the Court with a certain degree of discretion and certainly allows them to take into account certain mitigating or equitable factors.
I am familiar with the financial difficulty of this particular Chapter 11 debtor. Mr. Diaz, both by way of his corporate filing and by several other related filings, is before this Court and has experienced great difficulties so far as cash flow of the estate is concerned and I think I am bound to take that into consideration.
App. at A37-38. The bankruptcy judge, accordingly, refused to direct the parties’ dispute to the courts of New York.
Naneo subsequently moved before the United States District Court for the District of New Jersey for leave to appeal the bankruptcy court’s denial of its motion to dismiss. The district court granted Nan-co’s motion for leave to appeal. The order of the bankruptcy court was subsequently affirmed by the district court which noted that it “[could] not find on the record before it that [the bankruptcy court] abused [its] discretion and th[us would] not second-guess [that] decision.” App. at A63.
On appeal, Naneo argues that the district court erroneously applied an abuse of discretion standard of review to the bankruptcy court’s determination that the forum selection clause need not be enforced, and that both courts erred as a matter of law in ref using, to enforce the clause. Diaz responds that this Court’s decision in Zimmerman v. Continental Airlines, Inc., 712 F.2d 55 (3d Cir.1983), cert. denied, 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), modified our prior holding in Coastal Steel and renders forum selection clauses non-binding on bankruptcy courts. Based on Zimmerman, Diaz maintains that the purposes underlying the broad jurisdiction of the bankruptcy courts require that their decisions to enforce forum selection clauses be discretionary. Thus, Diaz argues, the district court properly reviewed the bankruptcy court’s determination that the forum selection clause not be enforced for an abuse of discretion. Finally, Diaz argues that under whatever standard the enforceability determination is reviewed, it carried its burden of establishing that, on the facts of this case, litigation in another jurisdiction would be unreasonable. We turn first to a review of the law governing *1050 the enforceability of forum selection clauses.
II.
A.
A preliminary concern in determining the enforceability of a forum selection clause is what law, state or federal, governs that determination. In General Eng’g Corp. v. Martin Marietta Alumina, Inc., 783 F.2d 352 (3d Cir.1986), this Court “correct[ed] the assumption that federal courts are bound as a matter of federal common law to apply The Bremen standard to forum selection clauses.” Id. at 356. Instead, we noted that the law of the state or other jurisdictions whose law governs the construction of the contract generally applies to the enforceability determination unless “a significant conflict between some federal policy or interest and the use of state law [exists].” Id. (quoting Miree v. DeKalb County, Georgia, 433 U.S. 25, 31-32, 97 S.Ct. 2490, 2494-95, 53 L.Ed.2d 557 (1977) (emphasis in original)); cf. Coastal Steel, 709 F.2d at 201 (“It is not entirely clear why, absent a [federal] statute ..., the enforceability of a contractual forum selection clause should properly be divorced from the law which in other respects governs the contract.”).
In the instant appeal, the parties’ Subcontract Agreement provides that “[t]he rights of the parties shall be construed pursuant to the laws of the state of New York.” App. at A-22.[2] Under New York law, the enforceability of forum selection clauses is governed by the standard enunciated in The Bremen. See Bense v. Interstate Battery Sys. of Am., 683 F.2d 718, 721 (2d Cir.1982) (quoting The Bremen, 407 U.S. at 15, 92 S.Ct. at 1916) (forum selection clauses generally enforced absent a strong ‘showpng] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching’). Moreover, this Court, in Coastal Steel, held that The Bremen standard was applicable even in a bankruptcy proceeding.[3] See Coastal Steel, 709 F.2d at 202. Similarly, the Second Circuit has recognized the applicability of that standard in bankruptcy courts as well as district courts exercising federal question jurisdiction.[4] See Envirolite Enter. v. Glastechnische Indus. Peter Lisec Gesellschaft M.B.H., 53 B.R. 1007 (S.D.N.Y.1985) (applying The Bremen), aff'd, 788 F.2d 5 (2d Cir.1986). Thus, the determination whether the forum selection clause in the instant action should be enforced must be made in accordance with the standard enunciated in The Bremen.[5]
B.
In The Bremen, the Supreme Court chronicled the historic disapproval of forum selection clauses by American courts. Notwithstanding such disapproval, the Court adopted a new, more expansive approach to the enforceability of forum selection clauses, one that, the Court maintained, “accords with ancient concepts of freedom of *1051 contract....”[6] 407 U.S. at 11, 92 S.Ct. at 1914. In addition, the Court stressed the elimination of uncertainties in trade relationships as a paramount goal undergirding the presumptive enforceability of forum selection clauses. The Court thus concluded that a forum selection clause “is prima facie valid and should be enforced unless enforcement is shown by the resisting party to be ‘unreasonable’ under the circumstances.” Id. at 10, 92 S.Ct. 1913.
Setting forth the elements of proof under this new approach, this Court in Coastal Steel stated that
a forum selection clause is presumptively valid and will be enforced unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.
709 F.2d at 202. Applying this test to the facts before it,[7] the bankruptcy court apparently concluded that the third prong of that test had been satisfied due to Diaz’s “financial difficulty.” App. at A38. The district court, reviewing the bankruptcy court order denying Nanco’s motion to dismiss, similarly focused on the third prong and was satisfied that Diaz’s “perilous financial condition” justified the bankruptcy court’s refusal to enforce the forum selection clause.[8] App. at A62. Thus, both courts rested their decisions on the “unreasonableness” of remitting Diaz’s contract claims to the courts of the State of New York.[9] Naneo now challenges the sufficiency of Diaz’s purported “financial difficulty” as the sole ground for non-enforcement of the parties’ contractual forum selection clause.
In Martin Marietta, we reaffirmed the rule that a party objecting to the enforcement of a forum selection clause as “unreasonable” must meet a strict standard of *1052 proof. Interpreting the command of The Bremen, we observed:
That the Court intended ... a strict standard in favor of enforcement is shown by the Court’s admonition that enforcement may be denied only where it would be ‘seriously inconvenient,’ such that the resisting party ‘would be effectively deprived of its day in court.’ The Court underscored this rule by observing that absent allegations that the inclusion of the forum selection clause was a product of fraud or coercion, ‘where it can be said with reasonable assurance that at the time they entered the contract, the par- • ties ... contemplated the claimed inconvenience, it is difficult to see why any such claim of the inconvenience should be heard to render the forum selection clause unenforceable.’
783 F.2d at 356 (citations omitted) (emphasis in original). We must determine whether Diaz met its heavy burden under The Bremen of proving “that enforcement would be unreasonable and unjust.” The Bremen, 407 U.S. at 15, 92 S.Ct. at 1916.
Diaz attempts to demonstrate that its financial condition renders enforcement of the forum selection clause unreasonable because “trial in the contractual forum will be so gravely difficult and inconvenient that [Diaz] ... will for all practical purposes be deprived of [its] day in court.” The Bremen, 407 U.S. at 18, 92 S.Ct. at 1917. Specifically, Diaz first maintains that, unlike the debtor in Coastal Steel, it has been unable to propose a satisfactory reorganization plan under the Bankruptcy Code for the discharge of its debts. This fact, Diaz argues, counsels against requiring it to commence new litigation in New York. Such a requirement would advérsely affect the reorganization, the success of which, according to Diaz, “depends on the debtor’s ability to marshall its assets.” Brief for the Appellee at 11. Second, Diaz asserts that, although its current counsel maintains an office in New York,[10] the chief attorney in this litigation is not admitted to the New York Bar and that, at any rate, McCarter & English would not represent it in a state construction action. Thus, “Diaz would be forced to locate another attorney, and would lose the benefit of the knowledge of this litigation gained by his present attorneys.” Id. Finally, Diaz simply asserts that it has no funds to finance additional litigation and that its precarious financial condition greatly reduces its chances of retaining new counsel even on a contingency fee basis.
Naneo suggests that Diaz’s failure to submit evidence to substantiate its position that its contractual claims should be retained by the bankruptcy court amounts to a failure to meet the unreasonableness prong of The Bremen test. In response, Diaz maintains that its poor financial state was understood by both parties and by the court, and therefore, there was no need to submit any evidence.[11] Indeed, the bankruptcy court cited its familiarity with Diaz’s financial condition as its basis for refusing to enforce the forum selection clause. See App. at A38. Nevertheless, neither the bankruptcy court’s intimate knowledge of nor Nanco’s concessions concerning Diaz’s precarious financial condition operates to discharge its burden of establishing grave inconvenience under The Bremen. Although Diaz arguably demonstrated some inconvenience in litigating in the contractual forum,[12] its assertions are *1053 insufficient to meet its heavy burden of proving unreasonableness and injustice. “ ‘Mere inconvenience or additional expense is not the test of unreasonableness, since it may be assumed that the plaintiff received under the contract consideration for these things.’ ” Deolalikar v. Murlas Commodities, Inc., 602 F.Supp. 12, 15 (E.D.Pa.1984) (quoting Central Contracting Co. v. Maryland Casualty Co., 367 F.2d 341, 344 (3rd Cir.1966)).
Stripped to its essence, Diaz’s contention is that a debtor in bankruptcy is entitled to a more lenient standard of proof. This is simply not the law. In Coastal Steel, this Court enforced a forum selection clause against a debtor in bankruptcy thereby requiring the debtor to commence its action in England rather than New Jersey. Similarly, in Envirolite Enterprises, the district court rejected the argument that the debtor-plaintiff need not comply with the contractual forum selection clause that required that litigation be brought in Austria. Here, Diaz has not carried its burden of demonstrating that requiring that litigation be brought in New York as opposed to New Jersey would effectively deprive it of its day in court.
We are also not persuaded by Diaz’s attempt to distinguish its situation from that of the debtor in Coastal Steel. The fact that Diaz has been unable to confirm a plan of reorganization has little or no bearing on its ability to commence litigation in New York. Moreover, Diaz has not explained why its current counsel cannot or will not represent it in litigation there. Nor has it explained why transfer of its case to another attorney — whether with McCarter & English or not[13] — would pose unique problems that would mandate non-enforcement of the forum clause. It is not uncommon for legal representation to change hands during the course of very complex and lengthy litigation. We are simply unable to discern why Diaz’s breach of contract claims against Naneo are such that new representation would prove devastating. Finally, Diaz has not established, or even maintained, that it cannot secure new representation to pursue its claims in New York. Instead, Diaz merely claims that “[i]ts chances of finding another attorney ... are slim to none.” Brief for the Appellee at 12 (emphasis added).
For the foregoing reasons, we conclude that the bankruptcy court incorrectly found that Diaz met its burden under The Bremen. • We turn next to the district court’s review of the bankruptcy court’s order denying Nanco’s motion to dismiss based on the forum selection clause.
III.
In affirming the bankruptcy court’s decision not to enforce the forum selection clause, the district court cited this Court’s decision in Zimmerman v. Continental Airlines, Inc., 712 F.2d 55 (3d Cir.1983), cert. denied, 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), for the proposition that “[t]he standard of review on appeal is whether the bankruptcy court abused its discretion in denying Nanco’s motion to dismiss.” App. at A62. Applying that standard, the district court concluded that no abuse had occurred and, accordingly, that it would not “second-guess” the bankruptcy court’s decision. Id. at A63. Naneo argues that application of an abuse of discretion standard was error. We agree.
Under Coastal Steel, absent applicable state law, bankruptcy courts must apply The Bremen test to determine whether a forum selection clause should be enforced. *1054 In turn, absent a strong showing by the party opposing enforcement that the conditions under The Bremen have been met, the bankruptcy court must enforce the forum selection clause. Diaz argues, however, that this Court’s subsequent decision in Zimmerman, in effect, undercut the pri- or pronouncement in Coastal Steel by affording bankruptcy courts considerable discretion in determining whether to enforce a forum selection clause. Diaz emphasizes our statement in Zimmerman that “[t]he economic fragility of the bankrupt’s estate, the excess of creditors’ demands over the debtors’ assets, and the goal of rehabilitating the debtor all argue for expeditious resolution of the bankruptcy proceeding,” 712 F.2d at 58, and concludes that “[u]nder Zimmerman, the decision to enforce a forum selection clause is left within the sound discretion of the Bankruptcy Court ... [and] will only be reversed upon a finding that the Court abused its discretion.” Brief for the Appellee at 7. Diaz miscontrues our holding.
In Zimmerman, this Court addressed the issue whether the bankruptcy court is exempt from the commands of the United States Arbitration Act, 9 U.S.C. §§ 1-208 (1982). Specifically, we considered whether § 3 of that Act, which provides for a mandatory stay of all court proceedings pending the completion of arbitration, was binding on the bankruptcy court. We concluded that, notwithstanding the strong federal policy favoring arbitration, the policies underlying the Bankruptcy Reform Act of 1978, Act of Nov. 6, 1978, Pub.L. No. 95-598, 92 Stat. 2549, viz., to avoid unnecessary delays and duplication of effort, outweigh those policies underlying the mandatory stay provisions of § 3. Consequently, we held that “the granting of a stay pending arbitration, even when the arbitration clause is contractual, is a matter left to the sound discretion of the bankruptcy judge.” 712 F.2d at 56.
Diaz cites this Court’s recognition in Coastal Steel of the analytical similarity between motions to enforce forum selection clauses and motions to stay proceedings pending arbitration, see 709 F.2d at 194, as indicative of the applicability of Zimmerman to this appeal. Notwithstanding that recognition — which by its own terms was limited to the issue of jurisdiction, see id., —two principal factors distinguish our decision in Zimmerman and militate against its extension to the instant appeal. First, the uniqueness of arbitration as an alternative method of dispute resolution[14] is such that the enforceability of arbitration clauses, though generally favored, is not governed by the same standard federal courts generally apply (absent applicable state law) to contractual forum selection clauses, namely, The Bremen test. Under that test, as discussed supra, enforcement is mandated absent a strong showing of unreasonableness and injustice. Conversely, federal courts apply a more exacting standard in determining whether to remit the parties’ cause to arbitration. A host of factors may inform that determination. For instance, a court may consider whether in fact an arbitrable issue exists; whether that issue arises out of a collective bargaining agreement, a federal statute, or some other source; whether, if the issue is a federal statutory claim, Congress has foreclosed arbitration of that claim. See, e.g., Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 797 F.2d 1197 (3d Cir.1986) petition for cert. filed, 55 U.S.L.W. 3259 (U.S. Sept. 25, 1986) (No. 86487). Thus, in determining in Zimmerman whether the congressional desire for expedited disposition of bankruptcy proceedings outweighed the congressional policy favoring enforcement of arbitration clauses, we were faced with very different policy concerns arising from the nature of the competing forums. Here, however, where both competing forums are judicial, the concern cited in Zimmerman, 712 F.2d at 58-59, over the relative delay, expense and duplication of ef *1055 fort involved in the respective forums is not implicated.[15]
Second, and more important, the policy concerns that animated this court in Zimmerman were embodied in two congressional acts. Underlying our decision in that case, then, was the accommodation of two competing federal statutes. See Zimmerman, 712 F.2d at 56 (“This appeal requires us to reconcile two contradictory federal policies.”) There is no similar conflict in the instant appeal. Rather, we are urged to hold that the Bankruptcy Act itself favors discretionary enforcement of forum selection clauses in bankruptcy proceedings. We believe, however, and hereby hold that our decision in Zimmerman is best limited to those cases where the identical policy concerns are at issue, namely, arbitration cases. Thus, contrary to Diaz’s assertion, Zimmerman does not announce a new standard governing the enforceability of forum selection clauses in bankruptcy courts. Nor does it represent an internal construction of the Bankruptcy Act. Rather, Zimmerman holds that where the policies underlying the Bankruptcy Act and the United States Arbitration Act conflict, the decision whether to stay a bankruptcy proceeding pending resolution of a contractually agreed-upon arbitration is left to the sound discretion of the bankruptcy judge. See 712 F.2d at 60.
In sum, Zimmerman does not affect the law, as articulated in Coastal Steel, concerning the enforceability of forum selection clauses in bankruptcy proceedings. Instead, as this Court specifically held in Martin Marietta,
[t]he court’s determination of the circumstances underlying its conclusion [whether to enforce a forum selection clause] are basic or inferred facts entitled to the presumption of correctness under the clearly erroneous standard of review. The court’s decision that these circumstances warrant refusing enforcement of the forum selection clause, [however,] is a legal conclusion or ultimate fact subject to plenary review.
783 F.2d at 359 (emphasis added). Accordingly, the district court erred in its reliance on Zimmerman in reviewing the order of the bankruptcy court denying Nanco’s motion to dismiss.
CONCLUSION
For the foregoing reasons we will reverse the judgment of the district court and direct that the bankruptcy court dismiss Diaz’s adversary proceeding with leave to commence a new action in the courts of the State of New York.

. The underlying basis of Diaz’s claim arose from a public works improvement contract entered into by Naneo, as general contractor, and the New York City Department of Transportation, as owner, for yard construction and track work at the Brooklyn Waterfront Rail Preservation Yard. Pursuant to a written Subcontract Agreement between Naneo and Diaz, Diaz agreed to furnish certain specified work at the project site for a total of $1.29 million.
In its complaint in the adversary proceeding, Diaz maintained that Naneo breached the subcontract by failing to make certain progress payments required thereunder. The merits of Diaz’s claim against Naneo, however, are not germane to the instant appeal, which concerns the non-enforcement- of the forum selection clause contained in the Subcontract Agreement.

. Although the bankruptcy judge acknowledged that New York law "appears to be the governing law of the contract," App. at A38, and announced her intention to apply it, there is no indication on the record that the substance or applicability of New York law concerning forum selection was explored. As indicated infra, however, New York law on forum selection is identical to the federal common law announced in The Bremen.

. Coastal Steel involved a challenge by a debtor, the third-party beneficiary of the enforcement of a forum selection clause in a contract between two defendants. This Court held that in the absence of a legally sufficient showing regarding the unreasonableness of enforcement, the forum selection clause would be enforced against the debtor who should have foreseen becoming a third-party beneficiary to the main contract.

. The Eleventh Circuit recently held that venue in cases predicated on diversity jurisdiction is a matter of federal procedural law, and thus contractual forum selection clauses are enforceable in diversity actions regardless of whether the law of the forum state deems such clauses as contrary to public policy. Stewart Org., Inc. v. Ricoh Corp., 810 F.2d 1066 (11th Cir.1987) (per curiam) (en banc).

. This result is not altered by the application of New Jersey law, the only other state whose law could arguably apply, because it also follows The Bremen. See Coastal Steel, 709 F.2d at 202 (citing New Jersey precedent).

. The Court also noted that favoring the enforceability of forum selection clauses "reflects an appreciation of the expanding horizons of American contractors who seek business in all parts of the world.” 407 U.S. at 11, 92 S.Ct. at 1914. The international considerations of the Court’s decision, of course, are not relevant to the interstate contract between Diaz and Naneo.

. The bankruptcy judge properly identified the applicable standard as follows:
forum selection clauses are presumptively valid and will be enforced unless a party objects and can establish either that the clause was the result of fraud or overreaching or would violate a strong public policy of the forum, or in a particular circumstance of a particular case would seriously inconvenience the objector or the debtor so as to be unreasonable.
App. at A37.

. The district court reviewed the bankruptcy court’s enforceability determination for an abuse of discretion. The application of that standard, however, as opposed to a plenary standard of review, is independently challenged by Naneo and will be discussed infra.

. As to the first prong of The Bremen test, the bankruptcy court specifically noted that there was no allegation or evidence of fraud or overreaching. See App. at A38. Nor does Diaz assert on appeal that the forum selection clause was included as a result of fraud or misrepresentation. As to the second prong, regarding public policy of the forum, neither the bankruptcy nor the district court considered whether the Bankruptcy Code reflects a public policy against enforcement of forum selection clauses under the circumstances of this case.
Coastal Steel rejected the notion that the policy of the bankruptcy court of facilitating the collection and distribution of debtor estates in itself exempts that court from the public policy favoring the enforceability of forum selection clauses. See 709 F.2d at 202. Instead, we observed that ”[a]t best the grant to protective federal jurisdiction over proceedings related to title 11 is one circumstance to be taken into account in making the unreasonableness determination.” Id. Diaz, however, has asserted that the adversary proceeding that is the subject of this opinion is a “core" bankruptcy proceeding and that Congress could not have intended to permit contractual forum selection clauses to override the policy of the Bankruptcy Code to concentrate core bankruptcy proceedings in the bankruptcy court in order to effectuate the Congressional purpose of speedy rehabilitation of the debtor. This argument is not foreclosed by our decision in Coastal Steel. In view of the fact, however, that the controversy at issue here is plainly a "non-core” bankruptcy proceeding, one that could have as easily been instituted in a state court as well as a district court, see In Re: Colorado Energy Supply, 728 F.2d 1283, 1286 (10th Cir.1984), we need not address this question.

. Diaz is represented by the law firm of McCarter & English, which maintains offices in Newark, New Jersey and New York City.

. Specifically, Diaz maintains "that such testimony was rendered unnecessary by [Nanco’s] own concessions.” Brief for the Appellee at 2. We need not determine here the extent of evidence required to sustain an allegation of unreasonableness. We are satisfied, however, that Diaz’s bald assertions do not establish the manifest and grave inconvenience contemplated by The Bremen and its progeny.

. Naneo argued before both this Court and the courts below (1) that "since New York and New Jersey are contiguous states, the burden Diaz would face by having to litigate in New York is no greater than the burden it undertook when it initially agreed to perform the underlying subcontract ... in ... New York;” (2) that the distance between the adversary proceedings forum and the contractual forum is no less than one hundred miles; (3) that Diaz’s current counsel operate their main offices in Newark, New Jersey, which is significantly closer to New York City — the contractual forum — than it is to *1053 Camden, New Jersey — the site of the instant adversary proceedings; (4) that Diaz’s current counsel maintain offices in New York City; and, finally, (5) that approximately one-third of the firm’s lawyers are admitted to practice in New York. See Brief for the Appellant at 20-21. Of course, the burden set forth in The Bremen is not on Naneo to disprove Diaz’s alleged inconvenience, although these undisputed facts would seem to satisfy such a burden if it existed. Rather, the "heavy burden of showing not only that the balance of convenience is strongly in favor of trial in [the current forum] ..., but also that a [New York] trial will he so manifestly and gravely inconvenient ... that [Diaz] will be effectively deprived of a meaningful day in court," The Bremen, 407 U.S. at 19, 92 S.Ct. at 1918 (emphasis added), rests squarely with Diaz.

. But see, supra note 12.

. "An agreement to arbitrate before a specific tribunal is, in effect, a specialized kind of forum selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." Scherk v. Alberto-Culver Co., 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974).

. We note that even if the policy concerns considered in Zimmerman were controlling here, since we have determined that Diaz's adversary proceeding is a "non-core" proceeding, see supra note 9, the identical result would obtain. As indicated by Naneo, "the fact that this is a ‘non-core’ proceeding means that trial of the adversary proceeding by the bankruptcy court will only result in delays and duplications of efforts, since either party may demand a de novo review in the district court." Letter of Michael A. Mulqueen at 4 (Dec. 18, 1986); see also 28 U.S.C. § 157(c)(1) (1982) (“any final order or judgment [in a non-core bankruptcy proceeding] shall be entered by the district judge after considering the bankruptcy judge’s proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected”).